Alexander *vs.* Walter, *et al.*, Lessee.—1849.

## ASHTON ALEXANDER AND SARAH R. ALEXANDER, *vs.* MARGARET WALTER, ANN M. WALTER, GEO. K. WALTER, AND OTHERS, LESSEE.

To make a judgment by default in an action of ejectment, a bar to a lease, and conclusive upon the rights of the tenant, under the statute of 4 *Geo.* 2, *ch.* 28, it must clearly appear that the court rendering the judgment, designed to exercise the power conferred by the statute; the affidavit of the plaintiff, required by that statute, must be filed during the term at which the judgment was rendered.

The owner of a leasehold interest in a lot of ground, in 1811, devised it by will to the appellees, the children of his daughter *M*, with directions that *W*, the husband of *M*, should receive the rent thereof. The reversion in fee of the same lot in 1814, became vested in *S R M*, one of the appellants. *W* took possession and paid the ground rent to *S R M*, up to March 1819, when he left the property. About one year after this, *S R M*, rented the lot to one *Smith*, against whom, in 1823, the rent being in arrear, she brought an action of ejectment, in which, judgment by default was rendered against the casual ejector, in March of the same year, and in February 1824, the affidavit of the plaintiff required under the statute of 4 *Geo.* 2, was filed in the case. In 1841, the appellees, who had now attained age, brought ejectment against the appellants in possession of the premises. HELD: that the proceedings in the ejectment against *Smith*, do not estop the appellants from denying *W*'s possession of the premises at the time that ejectment was brought.

*W* not being a party to the suit against *Smith*, and having no privity or connection with the latter, who was the immediate tenant of *S R M*, but claiming the lot under the original lease, there would be no mutuality in making the proceedings in that case an estoppel to the appellants in this.

As the appellants could not rely upon the recovery in the ejectment against *Smith*, as a bar to the right of the appellees to recover in this suit, the rule of reciprocity upon which the doctrine of estoppels stands, forbids the latter from using the same recovery as an estoppel to the former.

Estoppels must be reciprocal and bind both parties. They operate only on parties and privies in blood or estate, and can be used neither by nor against strangers.

As between the appellant and *Smith*, the former would be estopped from denying the statement in the affidavit of *S R M*, filed in the ejectment case against the latter, but *W*, the father of the appellees, and who was directed to receive the rents of the lot, was a stranger to that suit, and did not act upon, nor was he misled, injured, or deceived by the admission in that affidavit, it cannot, therefore, operate as an estoppel *in pais*, to preclude the appellants from showing in this case that they took possession *prior* to the time when the ejectment in that case was brought.

Alexander *vs.* Walter, *et al.*, Lessee,—1849.

Estoppels *in pais*, cannot be pleaded, but are given in evidence to the jury, and under the direction of the court, may operate as effectually as technical estoppels.

As a general rule, a party will be precluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter; but as to third persons, he is not bound, but may show that such admissions were mistaken or untrue.

The doctrine of estoppels *in pais*, stands upon the broad grounds of public policy and good faith: it is interposed to prevent injustice, and to guard against fraud, by denying to a party the right to repudiate his admissions when they have been acted upon by persons to whom they were directed, and whose conduct they were intended to influence.

The rule in *New York*, that a possession of fourteen years is the period from which a regular re-entry at common law for the non-payment of rent, may be presumed, is entirely arbitrary, and not sustained by authority or analogy, and cannot receive the assent of this court.

Where a lease contains a clause of re-entry for non-payment of rent, twenty years uninterrupted, exclusive, notorious and adversary possession of the lessor, and those claiming under him, will, in analogy to the statute of limitations, warrant the presumption of a regular re-entry at common law.

But a prayer which omits to present the question of adversary possession, as a fact to be found by the jury, will be defective.

From analogy to the statute of limitations and the doctrine of presumptions as applied to land, a possession for a less period than twenty years, is not sufficient to warrant the presumption of a regular re-entry at common law for the non-payment of the rent reserved by the lease.

The mere docket entry in an ejectment case of "agreed," not followed by a judgment dismissing the suit, cannot have the effect to extinguish the legal title of the plaintiff in the land for which the ejectment was brought; the deduction to be drawn from it is, that each party retired from the litigation, leaving their rights precisely as they stood before the suit was begun.

The deed of the collector of the city of *Baltimore*, conveying to the purchaser, property sold under the act of 1816, ch. 171, is evidence of the *factum* of the sale; the right to convey is implied from the power to sell.

But this deed is not evidence of the regularity of the proceedings preceding the sale, and out of which the power to sell arose.

The power to sell, vested in the collector by the act of 1816, ch. 171, is a naked power, specially conferred by statute, under proceedings *ex parte* in character, and the purchaser who claims under such power, must show affirmatively and positively the regularity of the proceedings out of which it grew, and the existence of all the prerequisites upon which its lawful exercise depended.

A notice of sale under the 3rd section of the act of 1816, ch. 171, which

describes the property as "a lot belonging to *W*, situated on the east side of South street, assessed with damages to the sum of $6.72," without designating its dimensions, on the particular part of the street on which it is located, by reference to a plat or otherwise, is too vague and uncertain in its terms, and is a fatal objection to the validity of the sale.

The advertisement must describe the property so definitely and precisely as that purchasers may, without dificulty, estimate its value.

Appeal from *Baltimore* county court.

This was an action of *ejectment*, instituted by the lessee of the appellees, on the 19th of April, 1841, for a lot of land situated on the east side of *South* street, in the city of Baltimore, particularly described in the declaration.

The tenants in possession, the appellants, appeared and pleaded *non cul*, on which issue was joined.

Upon the first trial of this case, the verdict under certain instructions by the court was for the defendants, the present appellants, and from the judgment thereon rendered, the plaintiffs, the present appellees, appealed, and at December term 1844, the Court of Appeals reversed the judgment and awarded a *procedendo*. The report of this appeal is in 2 *Gill*, 204.

The trial under the *procedendo* was had at May term 1847. At this trial, the plaintiff to prove the issue on his part, proved that *Daniel Bowley*, who is admitted to have been at the time, seized in fee of the lot of land in controversy, executed a lease thereof to one *Solomon Etting*, dated the 21st of December, 1798. This lease was for ninety-nine years, renewable forever, reserving the yearly rent of $100, payable to the lessor, his heirs, and assigns, on the 1st of May in each year, and contained a clause of re-entry for the non-payment of the rent.

The plaintiff then proved that this lease by several mesne conveyances become vested in *George G. Kraus*, who died in November, 1811, having first duly executed his will, which contained the following devise of the lot in question :

"*Item.*—I give to the children of my oldest daughter, *Margaret Walter*, the brick warehouse in *South* street, with its appurtenances thereon, during the residue of the term originally letten, with the benefit of renewal forever, subject to the

31    v.8

yearly rent reserved thereon. The rent thereof, my son-in-law, *Philip Walter*, shall receive, as soon as he and my daughter *Margaret* keep house for *themselves*, and not sooner.''

And further proved that *Margaret Walter* and her husband *Philip Walter*, named in said will, survived the testator, but died before this suit was instituted, and that the lessors of the plaintiff, are the children of said *Margaret* and *Philip*.

And the defendants on their part proved, that the said *Daniel Bowly* conveyed to *John Merryman*, the reversion in fee of said ground, by deed, duly executed on the 15th of August, 1806 ; and that by devise under the will of said *John Merryman*, duly proved and admitted to record, said reversion became vested in the defendant *Sarah Rogers Alexander*, on the 23rd of February, 1814.

And further read in evidence the deposition of *John Merryman*, taken before a justice of the peace by consent of parties, subject to all exceptions as to the effect of the testimony.

"That deponent is a brother of *Sarah Alexander*, wife of the defendant, *Ashton Alexander*, and knows the lot in controversy, the reversion of which, *John Merryman*, deponent's father, had acquired, it being leased to *George Kraus* ; that the ground rent was, after his father's death, the property of said *Sarah*; that *Kraus* paid the ground rent to deponent's father, and afterwards to said *Sarah*, until said *Kraus'* death, after which, *Philip Walter*, who married *Kraus'* daughter, took possession of the ground, and paid the ground rent for some years, the last payment he made was up to 1st May, 1819. Soon afterwards, *Philip Walter* moved from the property, and the house was shut up and no tenant in it, and continued so for upwards of a year. Deponent, for his sister, *(Sarah,)* then rented out the property to one *Horton*, who remained in the property upwards of a year, and at length moved away, and then the property remained unoccupied about a year, and then deponent rented it to a *Mr. Smith*. Deponent received from *Horton* and *Smith*, about $190 for his sister, and paid for her all the taxes : county taxes back to 1819, the city taxes beginning in 1820 or 1821, not later than 1821.

*Smith* was not in the property more than three months, he left it, deponent thinks, in the year 1822. After *Smith* went, deponent rented the property for his sister, to *Shellman* and *Swain*, and they occupied it until *Dr. Alexander* married his sister, and then deponent's agency ceased. No ground rent paid to his sister after 1st of May, 1819."

And further to prove the issue on their part, the defendants read in evidence, by consent, the act of 1816, ch. 171, entitled, "An act authorising the connecting of *Water* street with *King Georges* street at *Jones'* falls, in the city of *Baltimore.*"

The 1st section of this act authorises and requires the city commissioners of *Baltimore*, "to alter and extend the lines of *Water* street from *Warden* street to *Jones'* falls, and to alter and extend the lines of *King Georges* street to said falls, in such manner as shall be found most suitable for erecting a bridge over said falls, thereby affording a convenient passage from one of those streets into the other; and to make and return a plat of such alterations and extensions to the register of the city."

The 2nd section authorises and requires the mayor of said city "to appoint five suitable persons as assessors, to value and assess the damages which may be sustained by any person or persons, by the altering and extending said streets," and to apportion such damages to and amongst the owners of property, who in their judgment, shall be benefited thereby."

The 3rd section authorises and requires the city collector "to collect the damages to be apportioned as aforesaid from the several persons chargeable therewith, in the like manner as public taxes of the city, or by sale of the property, or so much thereof as may be necessary therefor, on which such damages may be assessed, if the owner or owners shall neglect or refuse to discharge the same; first giving at least thirty days' notice, in two or more newspapers published in the city of *Baltimore*, of the time and place of such sale."

And further offered in evidence the plat returned agreeably to the said act by the city commissioners of *Baltimore*, and

the appointment thereupon of assessors conformably to said act, who proceeded to execute the duties assigned them; and read in evidence the said proceedings, which, so far as the lot in controversy is concerned, state the assessment of it as follows :  "East side *South* street, *Philip Walter*, $6.72."

That portion of the original plat returned as above, which contained the location of the lot in dispute, had been torn off and lost.

And the defendants to prove a sale for satisfying the assessment of the piece of ground claimed in this cause under the said act, and due notice of said sale, read in evidence the following notice of sale :

"In pursuance of the act of Assembly for connecting *Water* street with *King Georges* street, at *Jones'* falls.

*Notice is hereby given*, that on *Tuesday*, the 25th day of July next, at the auction room of *Messrs. Van Wyck* and *Morgan*, will be offered for sale for cash to the highest bidder, (in default of the payment of the sums with which they are respectively charged, and cost of advertising,) the following lots of ground with their improvements, or so much thereof as may be necessary, which have been assessed to the persons whose names are set opposite thereto, viz :

Lot on east side *South* street, $6.72, *Philip Walter*," &c., &c.                    "Thomas Rogers, Collector."

"*Baltimore*, June 23rd, 1820."

And proved that the same was published for thirty days before said sale, in two daily newspapers published in the said city.  And further read in evidence the deed of said *Thomas Rogers*, as collector aforesaid, dated 16th of October, 1820, and conveying to *Philip Reigart*, the lot in question.  This deed recites the proceedings of the assessors under the aforesaid act of Assembly, and the sale of this lot in pursuance thereof to *Reigart*, for the sum of $50.  They also offered in evidence a deed from said *Reigart*, the purchaser, conveying said lot to the defendant *Sarah*, on the 1st of October, 1847.

And the plaintiffs then further to prove the issue on their part, offered in evidence, (subject to all objection on the part of

the defendants to the effect thereof,) a record of proceedings in *Baltimore* county court, being an action commenced by *Sarah R. Merryman's Lessee, against Isaac J. Smith,* on the 17th of March 1823, for the lot of ground in controversy. The sheriff returned the copy of the declaration, "copy set up on the premises 17th of March, 1823." A judgment by default at March term 1823, was rendered against the casual ejector. The day of the demise was 1st January, 1816. On the 12th of February, 1824, the affidavit of the lessor of the plaintiff, recited in the opinion, was filed in the cause, and on the same day, the plaintiff sued out a writ of *hab. fac. pos.,* under which possession was given on the 24th of February, 1824.

And also, (subject to objection as aforesaid,) read in evidence a record of proceedings in ejectment, being an action commenced by the said *Phillip Reigart's Lessee, against Philip Walter,* on the 2nd of November, 1820, for the lot in question. The demise laid in the declaration, is on the 26th of October, 1820, and the return of the sheriff is, "copy set up on the premises the 15th day of March, 1821." *Walter,* the defendant and tenant in possession, appeared and pleaded *non cul.* The cause was then continued from term to term, until June, 1824, when the following docket entry was made in the cause. "Agreed, 10th of June, 1824."

And also proved, that the defendants in the former trial in this court, offered in evidence on their part, the said proceedings in the case of *Sarah R. Merryman against Smith,* it being admitted that said *Sarah* is the present defendant, *Sarah Rogers Alexander,* wife of the defendant *Ashton.*

And thereupon the plaintiff prayed of the court the following instruction to the jury.

That the proceedings in ejectment, in *Merryman's Lessee, vs. Smith,* estop the defendant from denying the possession of *Walter,* of the premises in question, at the time when such ejectment was brought.

The defendants prayed the court to direct the jury, that—

1st. If they shall find that the defendant, *Sarah,* entered

into possession of the premises described in the lease from *Daniel Bowley* to *Solomon Etting*, by renting them out, as stated in the testimony, and that there was under the lease in evidence, one year's rent in arrear when the possession was so taken, and that she and her husband, *Ashton Alexander*, have so thenceforth kept the said possession, and were, and had been so in possession for more than twenty years before the bringing of this action ; and that the plaintiffs claim title under the lease of *Daniel Bowley*, read in evidence; then, that the defendant *Sarah* became, by devise from *John Merryman*, the owner in fee of the reversion of said *Daniel Bowley*, arising on said lease; and that said reversion was vested in her, at the time of her taking possession in manner aforesaid, at and before the rent aforesaid, became as aforesaid, in arrear, then the plaintiffs are not entitled to recover.

2nd. If the jury shall find that the defendant, *Sarah*, entered into possession in manner as stated in the aforegoing prayer, and that she and her said husband have thenceforth continually held said possession; and had so held it more than fourteen years, when this suit was instituted; and if they shall find the other matters set forth in the above prayer; the plaintiffs are not entitled to recover.

3rd. if the jury shall find the passing of the act of Assembly in relation to *Water* street, read in evidence, and that all the proceedings thereunder, as given in evidence, took place, and that thirty days' notice of the sale of the property assessed, as to *Philip Walter*, in said proceedings, took place, and that said property was the property claimed by the plaintiffs in this case; and that a sale did accordingly take place of said property, and that thereupon the deeds of *Thomas Rogers*, the city collector, to *Reigart*, and from *Reigart* to *Sarah Alexander*, were executed and acknowledged, and recorded, as set forth in the testimony, the plaintiffs are not entitled to recover.

And the court, (ARCHER, C. J., and LE GRAND, A. J.,) granted the instruction prayed by the plaintiff, and refused to grant the prayers of the defendants; to which opinion of the court in granting and refusing the respective prayers afore-

said, the defendants excepted, and the verdict and judgment being against them, appealed to this court.

The cause was argued before DORSY, C. J., CHAMBERS, SPENCE and MARTIN, J.

By MEREDITH and MAYER, for the appellants, and
By GLENN, for the appellees.

MARTIN, J., delivered the opinion of this court.

The first question presented for our examination by this record, is, whether the court below erred in deciding that the proceedings in the ejectment of *Merryman's Lessee, against Smith,* estop the defendants in this case, from denying the possession of *Philip Walter,* of the premises in controversy, at the time when such ejectment was brought?

When this case was before the Court of Appeals in 1844, 2 *Gill,* 204, the character of the judgment rendered by *Baltimore* county court, in the ejectment cause to which we have reference, was considered; and it was then held by the court, that it was not to be treated as a statutory judgment, under the act of 4 *Geo.* 2, *ch.* 28, and vested no title in *Mrs. Alexander,* then *Miss Merryman,* and constituted no bar to the appellee's right to recover the demised premises. The language of the court is :

"To give to this judgment the efficacy ascribed to it, it must appear to this court to be a judgment rendered under the statute of 4 *Geo.* 2 ; or in other words, the record must disclose such facts and circumstances as would justify us in believing or assuming, that in rendering its judgment, the court below designed to exercise the authority conferred on it by the statute. The record before us discloses nothing which could warrant us in any such assumption or belief. All the proceedings in ejectment; until long after the judgment, show it to have been an ordinary case of ejectment, (having no connection with the statute,) the judgment in which, is conclusive upon nobody."

In the proceedings in this ejectment of *Merryman's Lessee, vs. Smith,* an affidavit was filed by *Sarah Rogers Merryman,* the lessor of the plaintiff, in which she deposed : "that at the time of issuing the declaration, and before the time of serving a copy of said-declaration on the tenant in the possession of the premises, in said declaration mentioned, there was and is now due, and in arrear to the said *Sarah,* as landlord of said premises, the sum of $300, for three years' rent of said premises ; and the further sum of $49.50, balance due, and in arrear for one other year's rent thereof ; and that at the time of serving the copy of the said declaration on the tenant in possession of the premises, in said declaration mentioned, she was, and now is, landlord of said premises, and that the said *Isaac J. Smith* was the tenant in the possession thereof ; and that she then had, and now has power to re-enter on said premises for non-payment of said rent ; and that at the time, and before said ejectment was served, no sufficient distress was found on said premises, and countervailing the arrears of rent then due to this deponent." This affidavit was sworn to on the 3rd of February, 1824. And the propositions presented for our consideration on this branch of the case, is, whether the proceedings in this ejectment are to be regarded as an estoppel, as matter of record, or as an estoppel *in pais* standing upon the affidavit, so as to preclude the appellants from showing by evidence, that they were in the possession of the demised premises, antecedent to the 17th of March, 1823, the period at which the ejectment was instituted ?

It is impossible to maintain that the proceedings in the ejectment are to be treated as an estoppel by the record. Irrespective of all other objections, they are deficient in the indispensable ingredient of mutuality. *Philip Walter* was not a party to the suit in which the judgment by default was rendered. He had no connection or privity with *Smith,* the tenant in possession. So far from being represented by *Smith,* their titles were conflicting and antagonistical ; *Walter* professing to claim under the original lease, and *Smith* holding the property, so long as he retained it, as the immediate tenant of

*Mrs. Alexander.* The Court of Appeals, in 2 *Gill*, 204, decided that it was not competent for the appellants to rely upon this recovery in the ejectment, in the case of *Merryman's Lessee, vs. Walter*, as a conclusive bar against the right of the appellees to recover the demised property in this action, and the rule of reciprocity upon which this doctrine of estoppel stands, forbids the appellees from using it as an estoppel against the defendants. The authorities upon this point are uniform and conclusive.

In *Viner's Abg. tit. Estop., sec. A*, 2, the law of estoppel is thus laid down. "Every estoppel ought to be reciprocal, that is to bind both parties, and this is the reason, that regularly a stranger shall neither take advantage, nor be bound by the estoppel, privies in blood as the heir, privies in estates, as the feoffee, lessee, &c., privies in law, as the lord by escheat, &c. Shall be bound and take advantage of estoppels."

In the case of *Gaunt vs. Wainman*, 3 *Bingh., N. C.*, 69, the assignees of the demandant's husband, who was a bankrupt, conveyed the lands in controversy to the tenant as freeholder. It was a writ of dower, and the question was, whether the defendant who claimed under the deed, was estopped from showing that the premises were leasehold?

*Tindal, C. J.*, ruled it to be no estoppel. He said, "As between the parties to the deed, there may be an estoppel; but it is set up against a stranger to the deed. Suppose the tenant had bought the premises as leasehold, would the demandant be estopped to say that they were freehold? This is a case in which the defendant is not precluded from showing the real nature of the estate. According to *Coke Lit.*, 352, *a.*, every estoppel ought to be reciprocal, that is, to bind both parties, and this is the reason that regularly a stranger shall neither take advantage, nor be bound by the estoppel."

In *Lansing vs. Montgomery*, 2 *John. Rep.*, 381, an action of trespass was brought by *Montgomery* against two defendants, *Lansing and Goeway*. *Goeway* pleaded a former suit, and a judgment in his favor, to which the plaintiff demurred, and judgment was given for the defendant. *Lansing*, the other

defendant pleaded the general issue. It was held by the court that the plaintiff was not estopped by his demurrer to the plea of *Goeway*, from replying to the plea of *Lansing*, and going to trial on that issue; upon the ground that *Lansing* was not a party to the demurrer, "and one that is not bound by, cannot take an advantage of, an estoppel."

In *Hurst's Lessee, vs. McNeil*, 1 *Wash. C. C. Rep.*, 70, the defendant's counsel offered to read in evidence to the jury, the record of a trial between the lessor of the plaintiff and one *Pemberton*. The evidence was ruled to be inadmissible. *Mr. Justice Washington* said, "If there be a point completely settled and at rest, it is this, that a verdict between different persons cannot be given in evidence in a suit of one of the parties against a stranger."

*Lord Coke*, in his twenty-first reading on fines, says, "estoppel is reciprocal ; for he that shall not be concluded by the record or other matter of estoppel, shall not conclude another by it; except in the case of the King, and that depends upon his prerogative." This passage is quoted by *Mr. Justice Bayley*, in *Doe vs. Martyn*, 8 *Barn. & Cres.*, 497, where he clearly enunciates the principle, conclusive upon the point we are now considering, that estoppels must be reciprocal, that they operate only on parties and privies, and that they can be used neither by, nor against strangers.

We have already seen that the affidavit of the 3rd of February, 1823, filed by one of the appellants, as the lessor of the plaintiff, in *Merryman's Lessee, against Smith*, states that *Smith* was, at the time a copy of the declaration in the ejectment was served upon him, that is, on the 17th of March, 1823, the tenant in possession of the premises in dispute; and this affidavit, containing as it does, the declarations of a party to the record in the present suit, was unquestionably admissible in evidence as an element in the testimony introduced into the cause, to be considered and weighed by the jury, with respect to the question as to the period at which the appellants first entered into the possession of this property. The counsel for the appellees has, however, contended that the admission embodied

in this affidavit, operates as an estoppel in *pais;* is conclusive in its character, and precludes the appellants from proving that they took possession of the premises in controversy, prior to the time when the ejectment of *Merryman's Lessee against Smith* was brought. The solution of the question thus raised by the argument of the counsel for the appellees, depends upon authority, and we are satisfied, after a careful examination of the prominent cases upon the subject, that his proposition cannot be maintained.

The doctrine upon this point is correctly stated by the court, in the case of *The Welland Canal Company vs. Hathaway,* 8 *Wend.,* 483. The court said:—

"An estoppel is so called because a man is concluded from saying any thing, even the truth, against his own act or admission. The acts set up in this case, it is not pretended, constitute a technical estoppel, which can only be by deed or matter of record; but it is said they should operate by way of estoppel, an estoppel *in pais.* Such estoppels cannot be pleaded, but are given in evidence to the court and jury, and may operate as effectually as a technical estoppel, under the direction of the court. * * * As a general rule, a party will be precluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter. * * * All the cases in which the acts or admissions of a party are adjudged to operate against him, in the nature of estoppel, are generally cases where, in conscience and honest dealing, he ought not to be permitted to gainsay them."

In the case of *Dezell vs. Odell,* 3 *Hill N. Y. Rep.,* 215, the goods of *David Mitchell and Alexander Dezell,* were seized under an execution, and were delivered to the defendant upon his receipt, stipulating to re-deliver them to the officer by a de- signated day. They were not surrendered. And in an action of trover instituted by the officer against the receiptor, he offered to prove that the property was, at the time of the levy and re-

ceipt, his own. The receipt was ruled to be an estoppel. The court said:—

"We have the clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This is the very definition of an estoppel *in pais.* For the prevention of fraud, the law holds the admission to be conclusive."

In the case of *Presbyterian Congregation of Salem, vs. Williams,* 9 *Wend.,* 147, an action of ejectment was instituted by the plaintiffs, claiming to re-enter upon the premises in the possession of the defendant, as tenant, for the non-payment of rent. At the time of the service of the declaration, although there was property upon the land, the defendant declared that it did not belong to him, and that it was exempted by law from being distrained for rent. At the trial, the defendant offered to show there was sufficient property on the premises, out of which the rent could be collected, and that the action could not, therefore, be maintained. The defendant was considered by the court as the real party to the suit, and he was not permitted to controvert his admissions. This was a clear case for the application of the doctrine of estoppel. The plaintiffs were influenced by the representations of the defendant, and acted upon them. In the language of the court, the plaintiffs had a right to rely upon the admission of the defendant, that there was not sufficient property on the premises, liable to distress, to countervail the arrears of rent, and he ought not to be permitted to defeat the action, by showing what he then said was false, and thereby reap an advantage from his own wrong and falsehood.

In *Heane vs. Rogers,* 9 *Barn. & Cres.,* 577, an action of trover was brought by the plaintiff (against whom a commission of bankruptcy had issued,) against his assignees, to recover goods, which they, as such assignees, had sold. To prove that the plaintiff was a bankrupt, the defendants introduced a notice addressed, by the plaintiff, to certain persons from whom he had

leased an estate, in pursuance to the statute of 6 *Geo.*, 4, *ch.* 16, *sec.* 75, offering to surrender his lease, upon the ground that he was a bankrupt. The question was, whether the plaintiff was estopped by the act of having given up his lease to the lessors, from disputing the validity of the commission under which the defendants acted, they not being parties or privies to that transaction? The point was decided in favor of the plaintiff, and we refer to the opinion of *Mr. Justice Bayley*, as containing a clear enunciation of the doctrine of estoppel, as applicable to the case before us. He said:—

"There is no doubt but that the express admissions of a party to the suit, or admissions implied from his conduct, are evidence against him; but we think that he is at liberty to prove that such admissions were mistaken, or were untrue, and is not estopped or concluded by them, unless another person has been induced, by them, to alter his condition. In such case, a party is estopped from disputing their truth with respect to that person (and those claiming under him,) and that transaction; but as to third persons, he is not bound. It is a well established rule of law, that estoppels bind parties and privies, not strangers. The offer of surrender, made in this case, was to a stranger to this suit; and though the bankrupt may have been bound by his representation that he was a bankrupt, and his acting as such, as between him and that stranger to whom that representation was made, and who acted upon it, he is not bound, as between him and the defendant, who did not act on the faith of that representation at all. The bankrupt would probably not have been permitted, as against his landlords, whom he had induced to accept the lease without a formal surrender in writing, and to take possession upon the supposition that he was a bankrupt, and entitled, under 6 *Geo.*, 4, *ch.* 16, *sec.* 75, to give it up—to say, afterwards, that he was not a bankrupt, and bring an action of trover for the lease, or an ejectment for the estate. To that extent he would have been bound, probably no further, and certainly not as to any other persons than those landlords."

We have quoted largely from the opinion of the learned

judge in this case, as bearing directly upon the point under examination, and we regard it as a conclusive authority against the proposition advanced by the counsel for the appellee. If a case had arisen between the appellants and *Smith,* in which it was important to inquire, whether *Smith* was in the occupation of the demised premises at the time the declaration in the ejectment was served upon him, the appellants might, with respect to *Smith,* in such contest, be precluded from disputing the statements in the affidavit. For *Smith* was a party to the suit in which the affidavit was filed. But this was not the predicament of *Philip Walter.* He was a stranger to that suit. He did not act upon the admissions contained in the affidavit, and was not injured, misled or deceived by them. And it cannot be said, that it is against conscience and good faith to allow the appellants to abandon the line of defence occupied by them at the former trial, when they relied upon the judgment, in *Merryman's Lessee, against Smith,* as based upon the affidavit in conformity with the statute of 4 *Geo.,* 2; and now show, by evidence, as against these parties, that they, in fact, entered upon the demised premises as far back as 1820, under their common law right of re-entry for the non-payment of rent; and had continued in the uninterrupted and adverse possession of the property from that period up to the time of the institution of this suit. The doctrine of estoppel *in pais,* stands upon the broad grounds of public policy and good faith; it is interposed to prevent injustice, and to guard against fraud, by denying to a party the right to repudiate his admissions, when those admissions have been acted upon by persons to whom they were directed, and whose conduct they were intended to influence; but it has no application to a case like the one now under our consideration. We think, therefore, that the court below erred in granting the plaintiff's prayer.

We proceed to examine the legal propositions raised by the prayers offered, at the trial below, by the counsel for the appellants.

They asked the court to instruct the jury: *First.* If the jury shall find that the defendant, *Sarah,* entered into the pos-

session of the premises described in the lease from *Daniel Bowley* to *Solomon Etting*, by renting them out, as stated in the testimony, and that there was, under the lease in evidence, one year's rent in arrear when the possession was so taken, and that she and her husband, *Ashton Alexander*, have so henceforth kept the said possession, and were, and had been so in possession for more than twenty years before the bringing of this action; and that the plaintiffs claim title under the lease of *Daniel Bowley*, read in evidence, that the defendant, *Sarah*, became, by devise from *John Merryman*, the owner in fee of the reversion of said *Daniel Bowley*, arising on said lease, and that said reversion was vested in her at the time of her taking possession in manner aforesaid, at and before the rent aforesaid became as aforesaid in arrear, then the plaintiffs are not entitled to recover. And *secondly.* If the jury shall find that the defendant, *Sarah*, entered into the possession in the manner as stated in aforegoing prayer, and that she and her said husband have henceforth continually held said possession, and had so held it for more than fourteen years, when this suit was instituted, and if they shall find the other matters set forth in the above prayer, the plaintiffs are not entitled to recover.

By the terms of the lease from *Daniel Bowley* to *Solomon Etting*, of the 21st of December 1798, under which the appellees claim title to the premises in controversy, it is stipulated that if the rent therein reserved, shall be in arrear and unpaid for the space of sixty days next after the time on which the same is to be paid, the same being first lawfully demanded, it shall be lawful for the said *Daniel Bowley*, his heirs or assigns, into the said demised premises, or any part thereof, in the name of the whole, to re-enter, &c. And the propositions presented in argument by the counsel for the appellants, are: *First.* That assuming that the facts hypothetically set forth in the prayers to be true, that the jury were bound to presume, from the possession of twenty years, as therein stated, that the defendants had made a regular and lawful re-entry at common law, on the demised premises, for the non-payment of rent, according to the condition of the lease. And *secondly.* That this

presumption was to be deduced as a legal inference, from a possession of fourteen years.

Upon these points, we have been referred to several cases decided by the Supreme Court of *New York,* which we now propose to examine.

The case of *Jackson vs. Demarest,* was decided in 1805, 2 *Caine's Rep.,* 381, and it was there held, that a demand and entry at common law, would be presumed after a possession of fourteen years. *Mr. Chief Justice Kent* said:—

"The lessor of the plaintiff and his family abandoned the possession in 1778. In 1785, the landlord had a right to re-enter for non-payment of rent, and he then sold the land. In 1789, *Kason,* under his title takes possession. Here, then, is certainly a fourteen years' possession, and after that, we will presume a regular re-entry at common law. Re-entry is a matter *in pais,* and not of record."

In 1808, the case of *Jackson vs. Walsh* was decided, 3 *John. Rep.,* 226, and it was there determined, that a possession of nine years did not afford a presumption of a re-entry for non-payment of rent.

In *Jackson vs. Stewart,* 6 *John. Rep.,* 34, a regular re-entry was presumed from a possession of twenty-two years.

In *Jackson vs. Elsworth,* 20 *John. Rep.,* 180, it was held, that a possession of ten years was insufficient to warrant the presumption that the landlord had made a regular re-entry for the non-payment of rent. *Woodworth, J.,* said:—

"It is well settled, that the right of the tenant can only be barred by ejectment under the statute. A re-entry at common law does not defeat the title in equity. It is, however, sufficient for the defendant, if a re-entry in either way can be presumed, for then he holds the possession rightfully against the plaintiff." After stating that, under the circumstances of the case, an entry under the statute could not be presumed, and referring to the case of *Jackson vs. Demarest,* 2 *Caine's Rep.,* 382, before adverted to, he remarks: " In that case, which is the shortest period that has been deemed sufficient, the court do not rest the presumption on a re-entry by ejectment under the statute, but at com-

mon law, evidently because no presumption of the former could be indulged, so long as the record of recovery was not produced, or some cause assigned for its non-production. Considering that this principle operates in derogation of the grant, I think our courts have been sufficiently liberal, and that a shorter period, if sanctioned, would frequently be productive of manifest injustice. In *Jackson vs. Walsh,* nine years was held insufficient. The presumption relied on, would derive but little support from an additional year. I am of opinion, that the lapse of time is not sufficient to raise a presumption of re-entry either at common law, or under the statute."

It appears, therefore, from the adjudged cases in *New York,* that a possession of fourteen years is there regarded as the period from which a regular re-entry at common law will be presumed. But the rule thus established by the courts of that State is entirely arbitrary, is not sustained by authority or analogy, and one to which we cannot assent. We think, however, in analogy to the statute of limitations, that if the jury had found that the facts assumed in the first of the defendants' prayers were true, and that the defendants had been, for twenty years, in the uninterrupted, exclusive, notorious, and adversary possession of the property in dispute, they would have been bound to presume a regular re-entry at common law for the non-payment of rent, and this re-entry being presumed, the defendants would, in legal contemplation, have been regarded as rightfully holding the possession against the plaintiffs. But the vice of the prayer is, that the question of adversary possession was not presented as fact, to be found by the jury. *Matthews vs. Ward's Lessee,* 10 *Gill & John.,* 458. *Jackson vs. Porter,* 1 *Paine C. C. Rep.,* 466. *Angel on Lim.,* 413.

Upon this ground, the court were right in rejecting the defendants' first prayer.

We think, for the reasons already expressed, that the court were correct in rejecting the defendants' second prayer. Reasoning analogically from the statute of limitations, and the doctrines of presumption as applied to land, a possession for a less period than twenty years, is not, in our opinion, sufficient

33    v.8

to warrant the inference, that there was a regular re-entry at common law, for the non-payment of the rent reserved by the lease.

The question raised by the defendants' third prayer, relates to the validity of the sale made by *Thomas Rogers,* as the collector of the city of *Baltimore,* on the 8th of August, 1820, of the property in controversy, to *Philip Reigart,* in pursuance of the act of Assembly of 1816, ch. 171, and conveyed by *Rogers* to *Reigart,* by a deed bearing date the 16th of October, 1820. This property was subsequently conveyed by *Philip Reigart* to the defendants, on the 1st of October, 1840.

We find from the record, that on the 2nd of November, 1820, an action of ejectment was instituted in *Baltimore* county court, for the recovery of this property, by *Philip Reigart,* against *Philip Walter,* and that on the 10th of June, 1824, this suit was entered upon the docket, "agreed." This evidence was offered at the trial below, subject to exceptions, and it is now contended, by the counsel for the appellees, that the effect of this entry upon the docket, was to extinguish the legal title of *Reigart* in the lot for which the ejectment was brought, and operates as a conclusive bar against the defendants who claim under him.

This proposition cannot be maintained. There appears to have been no judgment rendered by the court, dismissing the suit, upon the foundation of the agreement, as in the case of *The Bank of the Commonwealth, vs. Hopkins,* 2 *Dana,* 395; we have no information with regard to the character or terms of this indefinite agreement, and the only deduction to be drawn from it, is, that each party retired from the litigation in which they were involved, leaving their rights precisely as they stood prior to the institution of the suit. In the case reported in 2 *Dana,* the mere agreement was not regarded by the court as interposing a bar between the parties, but the bar was created by the *judgment,* dismissing the suit at the instance of the parties, and in consequence of their agreement. In the case before us, there was no such judicial action.

Having disposed of this preliminary objection, we proceed to

consider the exceptions taken by the counsel for the appellees, to the validity of this sale. The first point made in the argument was, that the deed from *Rogers* to *Reigart*, of the 16th of October, 1820, was not evidence of the *factum* of the sale. This point is not tenable.

The 3rd section of the act of Assembly of 1816, ch. 171, imposes upon the collector the duty of collecting the damages apportioned, as required by the preceding sections, by a sale of the property on which the damages are assessed, if the owner shall neglect or refuse to discharge the same, but is silent as to the power to convey, by deed, the property thus authorised to be sold. But the right to convey, is, we think, to be implied from the power to sell. This principle is clearly established by the reasoning of the court, and authorities cited, in the analagous case of *Magruder against Peter*, 11 *Gill & John.*, 217, If the power to convey is assumed, it is very certain that the deed must be regarded as evidence of the sale; for it is made in pursuance of the sale, and stands upon it. In the case of a sheriff's sale, the title passes by the sale, and not by the conveyance, and yet the deed of the sheriff has always been considered as evidence of the *factum* of the sale. In *Estep and Hall's Lessee, vs. Weems*, 6 *Gill & John.*, 306, the Court of Appeals said: "That it has been more than once solemnly decided by this court, that it is *the sale* of the sheriff, which vests the title in the purchaser, which sale must be proved either by a deed, the sheriff's return, or by some note or memorandum in writing, in order to comply with the requisitions of the statute of frauds and perjuries."

And in *Jackson vs. Roberts' Executors*, 11 *Wend.*, 426, the chancellor said:—

"A sale under an execution is essential to the transfer of the property, and after the execution is proved to have been in the hands of the sheriff, so as to authorise the giving of the deed, his conveyance is the legal evidence, under the statute of frauds, of a sale under that execution."

It is, therefore, very clear, upon the authorities to which we have referred, that the deed is to be received as evidence of the

sale, but it is not evidence of the regularity of the proceedings preceding the sale, and out of which the power to sell arose. The power vested in the collector to sell, in this case, is a naked power, specially conferred by statute, under a proceeding *ex-parte* in its character, and used for the purpose of divesting a citizen of his property without his consent; and no legal proposition is more firmly established, than that the purchaser who claims under a power of this character, must show affirmatively and positively the regularity of the proceedings out of which it grew, and the existence of all the prerequisites upon which its lawful exercise depended.   *Williams vs. Peyton's Lessee*, 4 *Wheat.*, 77.   *Ronkendorff vs. Taylor*, 4 *Pet.*, 349.

One of the acts *in pais* to be proved in this case, by the defendants, as a prerequisite upon which the power to sell depended, was, that the collector had given notice of the sale as prescribed by the 3rd section of the act of 1816, ch. 171; and a fatal objection to the validity of this sale is, that the advertisement relied upon as a matter of sale, in conformity with the requirements of the statute, does not describe, with sufficient certainty, the lot in controversy as a part of the property intended to be sold.

The act of Assembly, in requiring thirty days' notice to be given, in the newspapers of the city of *Baltimore*, of the time and place of sale, intended not only to apprize the owner of the predicament of his property, that he might rescue it from the hammer of the auctioneer, by paying the damages charged upon it, but also that the lot should be so definitely and precisely described, that purchasers might, without difficulty, estimate its value, and the property in this way placed in a condition to produce an adequate price.

In this notice of sale, the property in dispute was described as a lot belonging to *Philip Walter*, and assessed with damages amounting to the sum of $672, situated on the east side of *South* street, but without designating, by reference to the plot, or otherwise, the dimensions of the lot, or the particular part of the street on which it was located.   An advertisement so vague and uncertain in its terms, conveys to the public no reliable in-

formation with respect to the value of the property, and has always been regarded as defective.

In the case of *Ronkendorff vs. Taylor*, 4 *Pet.*, 362, the Supreme Court, when considering what was to be regarded as a sufficient description of property advertised for sale by a collector of taxes, said:—

"That the property should be so definitely described, that no purchaser could be at a loss to estimate its value. It is not sufficient that such a description should be given in the advertisement, as would enable the person desirous of purchasing, to ascertain the situation of the property by inquiry. Nor, if the purchaser at the sale had been informed of every fact necessary to enable him to fix a value upon the property, yet the sale would be void, unless the same information had been communicated to the public in the notice."

We consider the sale as inoperative upon this ground, irrespective of the other objections which have been urged against it.

It was also insisted by the counsel for the appellees, that the return of the assessors, acting under the 2nd section of the act of 1816, ch. 171, was to be treated as informal and defective, because this lot was not designated, with sufficient certainty, as a part of the *corpus* upon which the damages were laid. This objection is insuperable in the present mutilated condition of the plot. But the plot annexed to the return, is to be considered as a part of it, and we think, that if this lot had been located and described upon that plot as the other lots are designated, the return of the assessors would not have been obnoxious to this objection.

It follows, from the views thus expressed, that we think the court below erred in granting the plaintiff's prayer, and were correct in rejecting the prayers of defendants.

JUDGMENT REVERSED, AND

PROCEDENDO AWARDED.