<div style="margin-note">DENEGRE v. MILNE.</div>

---

### BARBARA ANN WILSON v. L. R. MARSHALL, et al.

The title to lands sold for taxes should show on its face, or by reference to accessible public documents, a description of the land sold and its location, so that it may be identified, else the title is invalid.

A title, without such description, and unaccompanied by possession, cannot be cured by time.

To acquire a valid title by the prescription of acquisition, or by usucaption merely, a possession continuous, uninterrupted, peaceable, public, and unequivocal, for thirty years, is requisite; and this possession must be, at least in its commencement, a corporeal possession.

With a title translative of property, and aided by good faith, a possession of like character for ten years, will suffice against a real owner resident in the State.

Art. 3485 C. C., which declares that if a plaintiff, after having made his demand, abandons or discontinues it, the interruption of prescription shall be considered as having never happened,—contemplates a voluntary, intentional, active abandonment. A judgment of non-suit, in consequence of the non-appearance of the plaintiff or his counsel, when called, is not such an abandonment.

If prescription be interrupted by suit, the interruption continues during the pendency of the suit.

| 10 | 327 |
| 48 | 85 |
| 48 | 590 |
| 10 | 327 |
| 50 | 161 |
| 10 | 327 |
| 52 | 197 |
| 10 | 327 |
| 108 | 13 |
| 10 | 327 |
| 111 | 585 |
| 10 | 327 |
| 113 | 1061 |
| 10 | 327 |
| 123 | 691 |

APPEAL from Ninth District Court of Concordia, *Farrar*, J.

*G. S. Sawyer*, for plaintiff and appellant:

First.—That an intestate estate is not vacated for want of acceptance, but for want of some one known who can accept.

Second.—That there can be no such thing as a vacant estate, where there are forced heirs known, present or represented.

Third.—That the property of the estate of the parent vests by law in the child at the moment of the death of the deceased; that the said heir is seized of it of full right, and necessarily transmits it to his successor, by the provisions of both codes.

For the point last stated, in addition to the authorities cited, we cite Partid. 6, l. 13, Heinec. Prelec, 2 vol. p. 70; 7 La. Rep. 222.

Fourth.—That prescription cannot run against an estate belonging to minor children of the deceased, as it would then run against the rights of a minor, and not those of succession as a fictitious being, since the succession in that instance, and the heirs are one and the same.—Merlin Rep. verbo hered. No. 1, 23; 3 Toul., pp. 93, 95, Nos. 80, 83; Vaz 1, Nos. 72, 73, p. 77; see supra, pages 3, 3, 4.

WILSON
v.
MARSHALL.

Fifth.—The fictitious being of the Old Code does not necessarily imply that the estate is vacant, or that prescription can run against it in every instance ; and when applied to estates belonging to forced heirs means nothing.

It will not be pretended that prescription can commence to run in favor of one holding the property of another, after judicial demand to give it up, or that he can recover pay for improvements made subsequent to that time. Hence, we conclude that the plea of prescription in this case cannot be sustained, and that the defendants cannot recover, and we ask that the judgment of the court below may be reversed, that the judgment of this cause be in our favor, giving us the lands claimed, and fruits or rent, at the rate of one thousand dollars a year, since the date of judicial demand in 1836. The evidence of Alexander clearly shows that the whole tract, with the exception of a few acres, has been in cultivation since that time ; it is worth five dollars per acre ; hence, for two hundred and sixty odd acres, one thousand dollars per year is very reasonable. We hope the question of rents and improvements will be settled by this court, as it is a pure question of law.

*R. H. Marr,* on the same side.

*Stacy & Sparrow,* for defendant.

SPOFFORD, J. The plaintiff, as sole surviving heir of *John Wilson,* deceased, claims of the defendant a tract of 307 arpents of land in the parish of Concordia, by virtue of a certificate of confirmation granted to her ancestor on the 11th May, 1811.

The defendant sets up a title to the same land through divers mesne conveyances from one *Jonathan Thompson,* who is said to have acquired all the interest of *John Wilson* in the said tract by virtue of two sales for taxes, made by the Parish Judge of Concordia, one on the 9th of January, 1813, and the other on the 8th of May of the same year. A plea of prescription is also interposed in bar of the plaintiff's action.

The heirship of the plaintiff and the validity of the mesne conveyances from *Jonathan Thompson* to *Levin R. Marshall* appear to be undisputed, and the cause has been argued solely upon the questions whether the tax sales effected a divestiture of *Wilson's* title, and whether the defendant has acquired a title by prescription.

The defendant alleges that the land claimed was sold to *Thompson* for taxes assessed against it in the name of *John Wilson,* for the years 1811 and 1812. In support of that position he has adduced in evidence from the archives of the State, duly certified copies of the tables of apportionment of taxes for the parish of Concordia for those years, which by the 4th Section of the Act of the Legislature of the Territory of Orleans, approved April 10th, 1807, were required to be made out by the parish judge from the returns of three appraisers, to be appointed according to a previous section of the same act. (Sess. Acts, 1807, p. 140.)

A copy of the report of the three appraisers for the year 1812 has also been offered in evidence.

Upon the apportionment roll of 1811 the name of *John Wilson* figures as the owner of 320 acres of land in the parish of Concordia, appraised at $700, against which is assessed the sum of $2 05.

On the roll of 1812 he appears as the owner of 400 acres, appraised at $800, on which the sum of $2 60 is assessed. The number of acres and the valuation correspond with the tableau of the appraisers for the same year.

On the 9th of January, 1813, *James Dunlap,* under his official signature as judge of the parish of Concordia, executed a deed to *Jonathan Thompson,* in which he recited that on the day of the date thereof he " did expose to public

auction a certain tract or parcel of land situate in the parish aforesaid, on lake Concordia, about eight miles from the town of Vidalia, containing three hundred and twenty acres, be the same more or less, being the same tract of land returned by the appraisers for the year 1811, in the name and as the property of a certain *John Wilson*, for taxes due on said land for the year 1811, amounting to $4 11, as well as the further sum of $10 for the costs and charges in making the seizure and sale of said tract of land for the taxes aforesaid, agreeably to the provisions of the statute in such case made and provided, at which said auction the said *Jonathan Thompson* bid the sum of $14 11 for the said tract of land, and no person bidding more, the same was struck off to him the said *Jonathan Thompson*."

The original deed of the land to *Thompson* has been produced, and appears to have been duly recorded in the Parish Judge's office, on the 30th January, 1813.

Another deed of similar form was executed on the 8th of May, 1813, by the same person, styling himself "late Judge of the Parish of Concordia, and tax-collector therein," purporting to convey to the same vendor "a tract of land on lake Concordia, about six miles from the town of Vidalia, containing 400 acres, more or less, being the same tract of land returned by the appraisers for the year 1812, in the name and as the property of *John Wilson*, for the taxes due on said land for the year 1812, viz : $3 90, as well as $10 costs and charges," which land was adjudicated to *Thompson*, as the last bidder, for $13 90.

This deed was recorded in the office of the parish judge on the 15th January, 1824.

There is no proof of actual possession, under these deeds, by *Thompson* or any of his vendees until the year 1831. Ever since then the defendant or his authors have been in possession.

A formidable array of objections have been made to these deeds as evidence of title in the defendants.

The view we take of the case makes it unnecessary to notice more than one of the objections.

It is asserted, and correctly asserted, that the deeds do not give a sufficient legal description of the land they purport to convey.

When the power of the government is interposed to divest private titles to real estate, it is necessary, under pain of nullity, that the estate sought to be divested should be described so that it may be identified. The title should show on its face, or by reference to accessible public documents, what is taken from the owner and transferred to the purchaser, especially when, as in this case, the purchaser is not put in possession. *Carmichael* v. *Aiken*, 13 L. R. 211 ; *Lyon* v. *Hunt*, 11 Ala. 295 ; *Hughey* v. *Barrow*, 4 Ann. 252 ; *McGary* v. *Dunn*, 1 Ann. 338 ; *McManus* v. *Stephens*, 10 Ann. ; *Alexander* v. *Walker*, 8 Gill, 239 ; *Raymond* v. *Longworth*, 4 McLean, 481 ; S. C. 14 How. 76.

Now, the deeds of the parish judge to *Thompson* do not, either by their own terms or by reference to other titles, enable us to say that any specific parcel of land was taken from *Wilson* and conveyed to *Thompson*. One of them speaks of " a certain tract of land situate in the parish of Concordia, on lake Concordia, about eight miles from the town of Vidalia, containg 320 acres, more or less ;" the other deed, which it is pretended, conveyed the same property to the same vendor, a few months later, describes it as " a tract on lake Concordia, about six miles from the town of Vidalia, contaning 400 acres, more or less." Both

<div style="text-align:right">WILSON<br>*v.*<br>MARSHALL.</div>

deeds state that the land was "the same returned by the assessors of taxes, in the name and as the property of a certain *John Wilson;*" but a reference to the assessment rolls and to the return of the assessors for the year 1812, does not furnish any better clue to the locality of the land, or even as good a clue, as the deeds themselves; for those documents are silent as to its proximity to Lake Concordia and its distance from the town of Vidalia.

There is nothing of record to fix the latitude, longitude and dimensions of the tract conveyed to *Thompson;* no reference to surveys or surveyor's marks, to primitive or recorded titles, to natural limits, or to circumjacent properties; nothing to indicate where the new title begins and where it ends; nothing to enable *Thompson* to put his foot on a particular spot of ground and say, by virtue of the parish judge's deeds, "this was *Wilson's,* and now is mine."

And there is no statute of repose for such a title as this, unaccompanied by possession; not being translative of property in any individual thing, it labors under a defect which time cannot cure.

As the defendants, by claiming under and through *John Wilson,* have admitted the validity of his original title, and as the heirship of the plaintiff is established, she must recover the land, of which her ancestor was not legally divested by the tax sales, unless the defendant has a valid title by usucaption, or the prescription of acquisition.

Possession, *animo domini,* forms the basis of this species of prescription; it must be, at least in its commencement, a corporeal possession, and must be continuous, uninterrupted, peaceable, public, and unequivocal. C. C., 3453, 3466, 3467.

Such a possession, without any title whatever, for thirty years, (a reservation in favor of certain persons not *sui juris,*) will enable the possessor who invokes the plea of prescription to hold dominion over the land against all the world. With a title translative of property, and aided by good faith, a possession of like character for the period of ten years, will suffice as against a real owner resident in the State. C. C. 3465, 3442, 3437, 3438.

It does not appear that *Jonathan Thompson,* or any of his vendees down to *John S. Alexander,* ever set foot upon the land in controversy, or had even a civil possession. It is in evidence that *Alexander,* the last of the warrantors cited in the cause, went into actual possession, and under a title on its face translative of property, on the 1st December, 1831, the date of his deed by authentic act from *Monroe Rabitaille;* and there is nothing to impeach his good faith at that time.

Giving the defendants the benefit they claim under the Article 3492 of the Code, which declares that prescription runs against a vacant estate, and treating the succession of *John Wilson* as vacant, prescription did not begin to run in favor of *Alexander* until the 1st December, 1831, because the authors of his title had no possession to add to his own.

Citation to answer the present suit was served upon the curator of the defendant, *Marshall,* on the 6th May, 1852. The plaintiff has always been a resident of the State. The defendant then has acquired a valid title by the prescription of ten years, unless it has been interrupted by some cause pointed out by law.

The plaintiff says that there has been a legal interruption, because her tutor, *Curry,* instituted a suit on her behalf for the land in question, and caused *John*

331

*S. Alexander*, then the possessor and now a warrantor, to be cited to appear before the District Court of the Parish of Concordia on account of the property, which citation was served on the 3d June, 1836.

Subsequently, having become of age, she was substituted as party plaintiff to that suit, in her own right, and caused *Alexander* to be cited to answer her demand on the 5th June, 1838.

In 1842, the suit was tried by a jury, who rendered a verdict in favor of the defendant, *Alexander*. On the 2d June, 1842, the plaintiff prayed for a new trial, on the ground that there was misdirection of the court to the jury, and that the verdict was contrary to law and evidence. On the same day a new trial was granted by consent of the defendant's counsel.

No further steps appear to have been taken in the cause until the 12th June, 1843, when the following judgment was signed: "The plaintiff in this cause, and his counsel, having been duly called to appear and prosecute his suit, and neither the said plaintiff or his counsel, or any other person in their behalf, appearing, it is ordered that the cause be dismissed as of non-suit, and at plaintiff's costs."

No evidence was offered by either side to explain the abrupt termination of the former suit, unless the poverty of the plaintiff at that time is a circumstance upon which a reasonable inference may be based.

The defendant insists that the interruption caused by the former suit must be considered as having never happened under the Article 3485 of the Code. "If the plaintiff in this case, after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened."

But the weight of authority upon the construction of this Article of the Code, is that it contemplates a voluntary, intentional, active abandonment. Now, the plaintiff's counsel did not dismiss the suit or consent to its dismissal. She lived in a remote part of the State, and the mere absence of herself and her counsel at a term of court when her case was called, is insufficient without further evidence, to convict her of having abandoned or discontinued her demand. *Prall* v. *Peets' Curator*, 3 L. R. 282 ; *Dunn* v. *Kenney*, 11 Rob. 250 ; *Rorwood* v. *Devall*, 7 Ann. 523 ; *Mechanics' and Traders' Bank* v. *Theall*, 8 Ann. 469. We adhere to the interpretation given by these decisions to Article 3485 of the Code, and the case of *Bell* v. *Elliott*, 8 Ann. 453, so far as it conflicts with them, must be considered as overruled.

The effect of the former suit, then, was to interrupt in 1836 the prescription which commenced to run in 1831. And it was impossible for prescription to run whilst the suit was pending. "Ce n'est pas seulement pour le temps antérieur à la demande, que cette demande interrompt la prescription, c'est aussi pour tout le temps que durera l'instance ; en soit qu'une prescription nouvelle ne pourra pas recommencer contre le demandeur avant le jour où sera rendu le jugement par lequel cette instance se terminera." Marcadé, de la *prescription*, p. 124.

So, if a new prescription begins to run from the day of the dismissal of the former action in 1843, the requisite period of ten years had not elapsed when the plaintiff instituted her present demand in 1852.

She must have judgment for the land claimed in her petition. But we are unable upon the evidence before us to settle definitely the question touching rents, improvements, and the liabilities of the several warrantors as between themselves. It does not appear how much of plaintiff's tract was in cultivation

each year, nor what the rent was worth. The defendant, *Marshall*, was a pos-
sessor in good faith, under a just title, and the plaintiff can only recover rent
from the time she brought the present suit. Before being put in possession she
should pay a fair valuation for the improvements made upon her land by *Mar-
shall* and his authors, for which he should recover against the plaintiff. The
nature, extent and value of the improvements are not clearly shown.

*Marshall* bought of *Warren*, *Warren* of the *Mechanics' and Traders' Bank*, and
the *Bank* at sheriff's sale, under a special mortgage from *Alexander*. These
parties have been called in warranty successively. But in each of these sales
the tract of land in question, which forms a small part of a plantation called the
Hermitage, was sold with other property, in mass, for a round sum,—so that it
becomes impossible, without further evidence, to tell how much each party
evicted from this tract should recover against his warrantor.

It is therefore ordered, that the judgment of the District Court be reversed ;
it is further ordered and adjudged that the plaintiff be decreed to be the owner
of the tract of land described in her petition; and it is ordered that the cause
be remanded to the District Court for further proceedings according to law, to
ascertain the sum due to the plaintiff by the defendant, *Marshall*, for rent, and
also the sum due the said defendant by the plaintiff for improvements made
upon the land by himself and his authors, and also to establish the rights of the
defendant *Marshall* against his warrantors, and of the several warrantors as
between themselves ; it is further ordered that no writ of possession issue until
a final decree herein, and that the cost of this appeal be borne by the defend-
ant, *Marshall*—the other costs to abide the determination of the suit.

Re-hearing refused.