CHRISTOPHER·HOMER *vs.* CHARLES F. GROSHOLZ and
ALBERT COQUENTIN.
CHARLES F. GROSHOLZ and ALBERT COQUENTIN *vs.*
CHRISTOPHER HOMER.

*Receipt—'Estoppel in Pais—Evidence : Presumption—Priority
between Creditors—Fraudulent Deed.*

The recital of the payment of purchase money in a deed, or of the receipt of
the mortgage debt in a release, is not always conclusive upon the parties.

To constitute an estoppel *in pais*, there must not only be acts and admissions
intended to influence another, and which come to his knowledge; but his
conduct must be influenced thereby.

Where A. had been in the habit of selling goods on credit to B. during the
existence of a mortgage from B. to C. HELD:

That this furnished a strong presumption that goods sold by A. to B., after a
release from C. to B., would have·been sold to the same amount and on the
same terms, even if the release had not been executed and recorded.

B. executed to C. a deed of trust of his property, on the 18th of February,
1867, to secure the payment of a debt due to, and of notes endorsed by the
latter, and also of debts due to other parties.   On the 2nd of January, 1868,
all this indebtedness being paid off, except about one-fourth thereof being
$5500, due to himself—C. executed to B. a release in full, at the request of
B., who stated, that the deed of trust made him "look bad with Bradstreet,"
or, "on Bradstreet's books;"  the said Bradstreet being a commercial agent.
Between then and the 31st of July, 1868, B. purchased of A. in Paris,
merchandise which he shipped home, and returning himself in failing
health, executed to C., at his request, on the 26th of August, 1868, a mort-
gage of all his property, to secure the payment of the $5500 above named,
and to indemnify him in certain other transactions.   There was no evidence
of fraud or corrupt dealing in this transaction, and B. was solvent to the
time of his death, which occurred shortly afterwards.   C. became his execu-
tor, and A.  filed a bill praying a separate account of the sales of the mer-
chandise purchased  by B. from him, and for the vacation of the mortgage.
HELD:

1st. That A. was not entitled to a separate account.

2nd. That the mortgage should not be vacated.

3rd. That C. was entitled to priority, as to the $5500, as well as to the other debts secured by the mortgage.

CROSS-APPEALS from the Circuit Court of Baltimore City.

The principal facts are stated in the opinion of the Court. The amount of indebtedness secured by the deed of trust of the 18th of February, 1867, from Husgen to Homer was about $24,000, of which about $20,000 was due to Homer, and the remainder to other parties, most of whom were foreigners.

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*William A. Fisher,* for Grosholz and Coquentin.

The sum of $5500 was properly excluded from the mortgage debt under the mortgage of August, 1868, and properly excluded from sharing with the complainants in the distribution ; because the defendant is *estopped* from setting up that indebtedness, after having informed the public by a recorded release that it had been paid by sales of certain chattels. *Herman on Estoppels, section* 333 ; *Gill vs. Griffith,* 2 *Md. Ch. Dec.,* 270—(Affirmed by the Court of Appeals.) *Pilmore vs. Hood,* 5 *Bingham, N. S.,* 97 ; *Water's Appeal,* 35 *Penna. State,* 523 ; *Brown vs. Castles,* 11 *Cushing,* 348.

Homer cannot assert that the statement in the release is not true. *Henderson vs. Mayhew,* 2 *Gill,* 409 ; *Anderson vs. Tydings,* 8 *Md.,* 440–442.

No other evidence is needed of notice to the complainants of the statements in the release than its recording. This is conclusive against them, and also must be for them. *Cook's Lessee vs. Kell,* 13 *Md.,* 469.

The complainants were entitled to a separate account from the executor of the proceeds of sale of their own goods sold after the release had been recorded. The facts show that Husgen was insolvent, and that there was a corrupt agreement between Husgen and Homer, by means of which Husgen obtained false credit with the complainants, for which he had no reasonable expectation of paying. The mortgage to Homer was given to secure a past indebtedness, and to a creditor who took with full notice, and his title was no better than Husgen's, and there are no other lien claimants. *Ratcliffe vs. Sangston,* 18 *Md.,* 383; *Hyde vs. Ellery,* 18 *Md.,* 497.

The mortgage of August, 1868, should have been declared fraudulent and void against Homer's creditors. It was the result of a fraudulent scheme, whereby the records were made use of to spread a falsehood before the public, and especially before those from whom Husgen was to buy his goods. After he had thus obtained the goods, the defendant at once appropriated them to his own use. *Wendell vs. Van Rensselaer,* 1 *Johns. Ch.,* 353; *Hildreth vs. Sands,* 2 *Johns. Ch.,* 35; *Pilmore vs. Hood,* 5 *Bingham, N. S.,* 97; *Hyde, et al. vs. Ellery, et al.,* 18 *Md.,* 497; *Gardner vs. Lewis,* 7 *Gill,* 399, 402.

*Luther M. Reynolds* and *Orville Horwitz,* for Homer.

The recital in the release of the deed of trust, dated January 2nd, 1868, viz: that "all the debts or other money obligations of James Husgen," mentioned in the deed of trust, "are paid," is not of any binding force, *even as between the parties to the deed;* the acknowledgment of payment or amount of consideration is always susceptible of explanation, and is one of the exceptions to the rule of evidence. The Maryland Reports are full of cases to this effect. *Wolfe vs. Hauver,* 1 *Gill,* 84; *Elysville, &c., vs. Okisko Co.,* 5 *Md.,* 152; *Robinett vs. Wilson,* 8 *Gill,* 181; *Shepherd vs. Bevin,* 9 *Gill,* 36; *Wool-*

*len's Ex'rs vs. Hillen's Ex'r*, 9 *Gill*, 193 ; *Carr, et al. vs. Hobbs*, 11 *Md.*, 285 ; *Cunningham vs. Dwyer*, 23 *Md.*, 229.

The said recital not even operating as an *estoppel* between the parties, has no binding effect whatever where strangers are concerned. *Nutwell vs. Tongue's Lessee*, 22 *Md.*, 444 ; *Daingerfield vs. May*, 31 *Md.*, 340 ; *Alexander vs. Walter*, 8 *Gill*, 240 ; *Cecil vs. Negro Rose*, 17 *Md.*, 92 ; *Casey's Lessee vs. Inloes*, 1 *Gill*, 494.

The application of the doctrine of estoppel against the manifest intention of the parties, is odious and never allowed by Courts. 2 *Smith's Leading Cases*, 620, 5*th Am. Ed.*, notes to *Doe vs. Oliver*.

The design was to release the property, not the debt, and the recital was made for that purpose, and that purpose only. The release was *bona fide* and operative, and did not contain any secret trust or corrupt agreement. If Husgen had died abroad or refused to execute another mortgage, Homer would have stood on a footing with other creditors, and although he might have shown that the debt was not paid, could not have thereby been relieved from the operation of the release. *Daingerfield vs. May*, 31 *Md.*, 340.

Neither the existence of the deed of trust nor of the release is brought home to complainants, and could, therefore, have had no influence on them. But if it might have had, that is not sufficient ; it must be shown, that the statement had a direct influence in producing the result. *Alexander vs. Walter*, 8 *Gill*, 240 ; *Darrah vs. Bryant*, 56 *Pa.*, 75 ; *Biddle Boggs vs. Mercer Mining Co.*, 14 *Cal.*, 367 ; *Williams vs. Chandler*, 25 *Texas*, 11 ; *Phillipsburgh Bk. vs. Fulmer*, 2 *Vroom*, 55 (*N. J.*)*; Taylor vs. Scoville*, 54 *Barbour*, 34 ; *White Mountain Bk. vs. West*, 46 *Maine*, 15 ; *Simpson vs. Pearson*, 31 *Ind.*, 5 ; *State vs. Pepper*, 31 *Ind.*, 76 ; *Garlinghouse vs. Whitwell*, 51 *Barbour*, 210 ; *Elmore vs. Marks*, 39 *Vermont*, 538 ; *Turner vs. Coffin*, 12 *Allen*, 401 *Collins vs. Case*, 23 *Wisconsin*,

230; *Donaldson vs. Hall,* 2 *Daly,* [*N. Y.,*] 325 ; *McKinzie vs. Steele,* 18 *Ohio,* 41.

The registry law does not give to a man the right, for his own benefit, to impute to himself knowledge of a fact he did not have, but gives to others the right to impute to him knowledge of facts which the register afforded him an opportunity to find out. *Cooke's Lessee vs. Hill, et al* , 13 *Md.,* 493. Any other doctrine would permit a man, who was not in truth deceived, to palm himself off as though he were. There is no attempt on the part of Homer to set up the first mortgage anew, on the ground that the amount stated to have been paid, was not paid or to cut out intervening incumbrancers who had been or might have been misled, but to set up a totally distinct and different paper, to which there is and can be no valid objection.

There was no intent on the part of Homer to mislead or do harm to any one by the release of January, 1868, and certainly not to the complainants in any way ; the greater part of the indebtedness intended to be secured by the mortgage of 1867 having been paid, Homer, in order to gratify Husgen, actually released the property from any lien for the residue of the obligation, and put that residue of obligation at risk ; he may have been told by Husgen that it made him look "bad with Bradstreet," but at the same time he swears that that was not his motive in releasing, and that he intended nothing wrong.

In point of fact no wrong or injury happened by reason thereof, for Husgen was solvent, and believed by Homer and everybody else to be solvent in January, 1868 ; and his credit required no aid with the complainants, with whom he had been dealing for a long time.

GRASON, J., delivered the opinion of the Court.

These are cross-appeals from an order of the Circuit Court for Baltimore City, over-ruling exceptions of

Homer to an auditor's account, and finally ratifying the account, Homer appealing because he was not allowed the full amount of his claim under the mortgage of the 26th day of August, 1868, and Grosholz and Coquentin appealing first, because they were not allowed the whole proceeds of the sale of the merchandise, purchased of them by Husgen ; and second, because Homer was allowed to participate in the distribution of said proceeds of sale with the other creditors of Husgen.

On Homer's appeal, it was contended by the counsel of the appellees, that the appellant is estopped from setting up his claim, to the extent of five thousand five hundred dollars, because it was included in the deed of trust of February, 1867, and was, by the deed of release of January, 1868, declared to be paid and fully satisfied.

It has been settled by various decisions in this State, that the recital of the payment of purchase money in a deed, or of the receipt of the mortgage debt in a release of mortgage, is not conclusive upon the parties, but is always open to explanation. *Wolfe vs. Hauver*, 1 *Gill*, 84 ; *Robinett vs. Wilson*, 8 *Gill*, 181 ; *Shepherd vs. Bevin*, 9 *Gill*, 36 ; *Carr vs. Hobbs*, 11 *Md.*, 229 ; *Dangerfield vs. May*, 31 *Md*, 344. The deed of January, 1868, released the security but not the debt, and in an action by Homer against Husgen to recover the debt, the former would not have been estopped by the recital in the deed, from showing that the debt was still due. But, it was also contended that the recital in the deed of January, 1868, that this debt had been paid, and the recording of the deed was notice to the world that the debt had been paid, without which the appellees would not have parted with their goods to Husgen on credit, and therefore, that such declaration operates as an estoppel *in pais*, against Homer, as to his claim of five thousand five hundred dollars. In the case of the *Welland Canal Company vs. Hathaway*, 8 *Wend.*, 483, the Court say, "to constitute such an

estoppel, there must be acts or admissions intended and designed to influence the conduct of another; the acts or admissions must come to the knowledge of the party, his conduct must be influenced by them, and a denial of them will operate to the injury of the party, whose conduct is influenced by them. The Court of Appeals, in the case of *Alexander vs. Walter,* 8 *Gill,* 249, adopt the rule laid down in the *Welland Canal Co. vs. Hathaway,* as the correct doctrine, and applied it to the case then before them, and it must be regarded as the law of this State. The same doctrine has been held in other States of the Union, and is to be found in the cases cited in the appellant's brief. There must not only be acts or admissions, which come to the party's knowledge, but *his conduct must be influenced by them.* Conceding then that the registration of the deed of January, 1868, imparted to the appellees, a knowledge of the recitals therein contained, that the debt had been paid, yet one of the necessary ingredients of an estoppel is still wanting, as there is no proof whatever that the appellees, or either of them, were influenced thereby to part with their merchandise to Husgen upon credit. On the contrary the proof shows that Husgen had been purchasing goods on credit from time to time, from Coquentin in Paris, at the very time that the deed of trust was in existence and upon record, and notice of which, he is therefore presumed to have had; and this fact furnishes a strong presumption that the goods sold to Husgen, after the release had been executed and recorded would have been sold to the same amount, and upon the same terms, even if the deed of release had never been executed and recorded. Under these circumstances, and in the absence of proof, that the appellees were influenced by the release to sell their goods on credit; we think it very clear that Homer is not estopped from setting up his claim to the five thousand five hundred dollars, which was rejected by the Court below.

Upon the appeal of Grosholz and Coquentin, it was contended first, that they were entitled to a separate account from Homer as executor of Husgen, of the proceeds of the sale of their goods sold to Husgen after the deed of release had been recorded, on the ground that Husgen was insolvent, and that there was a corrupt agreement between him and Homer by means of which he obtained false credit with the appellants, when he had no reasonable expectation of paying, and because the mortgage to Homer was given to secure a past indebtedness, and to a creditor who took with full notice, and his title was therefore no better than Husgen's.

The proof shows that Husgen was regarded as perfectly solvent at the time the release was executed, at the time the goods were purchased in Paris, and at the time the mortgage was executed. In October, 1868, a petition in bankruptcy was filed in the United States Court, by Grosholz and Coquentin against Husgen, and after a full investigation, the deeds, now the subject of consideration in this case, having then been offered in evidence, the Court dismissed the petition. Nor is there any proof of any corrupt agreement between Homer and Husgen, by means of which Husgen was to obtain false credit. The proof shows that Husgen was indebted to Homer, and that the latter had endorsed largely for him, and that the deed of trust was executed, to enable Homer to pay himself out of the sale of the property conveyed, the amount due him, as well as to secure him against his liability as endorser, and also to pay some debts due by Husgen to other parties. All this indebtedness was paid off, except the sum of five or six thousand dollars due Homer, when Husgen requested him to execute the deed of release, stating that it made him look bad with Bradstreet, or on Bradstreet's books, the party named being a commercial agent. Homer, at first declined to execute the release, but believing that Husgen was perfectly sol-

vent, and would pay the debt, and being willing to comply with the request of Husgen, who was his brother-in-law, consented to his request to release, and it was accordingly executed and put upon record. This was done without any agreement or understanding between the parties, as far as the proof discloses, that any security was to be demanded or given in the future for the debt then due. On the other hand the proof shows that this transaction took place in good faith, and without intention to injure any one. The proof further shows that Husgen had been dealing with the appellants for a long time, and that while he purchased goods of them after the release, to the amount of 16,375 francs, their account shows that he had, during the same period, paid them nearly 21,000 francs, a larger part of which was paid after the bill of 16,375 francs was contracted. We are therefore of opinion that the appellants are not entitled to have a separate account of sales of the goods sold by them to Husgen in the spring and summer of 1868.

But it was contended, secondly that the mortgage of the 26th August, 1868, was fraudulent and void against Husgen's creditors; it being, as it alleged, the result of a fraudulent scheme, whereby the records were made use of to spread a falsehood before the public, and especially before those from whom Husgen was to buy his goods, and after he had thus obtained them, Homer at once appropriated them to his own use. Much that we have said upon the first point of the appellants, applies with equal force to this. There is no evidence in the record of any such scheme, or that any one was induced by the recital of the release to give credit to Husgen; he was at that time and down to the time of his death, solvent. The proof further shows, that Homer kept no books, but that his son attended to his business for him; that Husgen returned from Europe in failing health, and that Homer held no evidence of Husgen's indebtedness to him

nor of his ownership of the stock he had loaned him; and fearing that Husgen's death might be disastrous to him in the then condition of accounts, he saw Husgen and obtained from him a statement of the amount due him, and procured the execution of the mortgage of 26th August, 1868, so as to be provided with some evidence of the indebtedness, and security for its payment. The proof further shows, that the amount for which the mortgage was given was actually due. We can discover no ground of objection to its validity.

The order appealed from will be reversed in part, and affirmed in part, and the cause remanded for further proceedings in conformity with the views expressed in this opinion.

> *Order reversed in part, and*
> *affirmed in part, and cause*
> *remanded for further proceedings.*

(Decided 10th July, 1873.)

ALVEY, J., dissented.