Chilton v. Scruggs.

WILLIAM CHILTON v. WM. C. SCRUGGS.

1. CHANCERY COURT. *Statute of limitations. Mistake.* The chancery court
will not prohibit a party from relying on the defense of the statute of
limitations to a suit at law upon a note, merely upon the ground
of mistake on the part of the plaintiff as to the existence of an in-
junction inhibiting him from suing upon the note, the mistake not
having been superinduced by the debtor.

2. SAME. *Same. Recognition. Trust.* If, however, within the time of
statutory bar, the maker of the note has, by solemn admissions under·
oath, in the course of judicial proceedings to which the creditor is
made a party, not only recognized the liability, but sworn that the
fund, evidenced by the note, was held by him as a payment on the
obligation for indemnity against which the note had been assigned in
trust to the creditor, equity will enforce the trust thereby created,.
and if the creditor, pending the previous litigation, has paid the
obligation, will give him a decree for the fund with interest.

3. ESTOPPEL. *Judicial admissions.* A person who has made solemn ad-
missions under oath in the course of judicial proceedings, will not be
permitted to deny them without first showing that they were made
inconsiderately, or without full knowledge of the facts.

FROM HAMBLEN.

Appeal from the Chancery Court at Morristown.
H. C. SMITH, Ch.

McFarland & Dickson for complainant.

J. C. Hodges for defendant.

Cooper, J., delivered the opinion of the court.

Bill filed to enjoin the defendant from relying on the statute of limitations in defense to an action at law upon the complainants' demand, and, the court having acquired jurisdiction for this purpose, for a decree against the defendant for the demand, and a final adjudication of the rights of the parties. The chancellor overruled a demurrer to the bill, but, on final hearing, dismissed the bill, and complainant appealed.

On the 18th of October, 1859, complainant became the surety of R. D. Scruggs on notes at twelve months for $6,990, payable to M. C. and A. Scruggs, executors of R. Scruggs, deceased, given for property of the estate bought at the administration sale. On the 3d of May, 1861, to secure complainant on this liability, R. D. Scruggs assigned complainant certain property, *choses in action*, etc., and among other things, the note of W. C. Scruggs to R. D. Scruggs for $1,500, borrowed money, dated October 2, 1860, and payable one day after date. On the 27th of December, 1872, complainant brought his action at law on this note against W. C. Scruggs, who pleaded the statute of limitations of six years, and a plea of set-off. The bar of the statute of limitations, it is conceded, had attached before the commencement of the action, and the object of the bill is to restrain the defendant from relying upon that defense. The only

real question turns upon the right of the complainant to this relief. He bases his right upon a mistake of fact in relation to the existence of an injunction against the institution of suit upon the note until shortly before the commencement of his action, and upon the defendant's attitude in regard to the debt evidenced by the note as disclosed in certain pleadings and evidence in a chancery case of Jacob Myers against Richard D. Scruggs and others.

In August, 1860, R. D. Scruggs became indebted to Jacob Myers in a large sum of money as the purchase money of slaves sold by Myers to Scruggs. Myers was at the time indebted to W. C. and A. Scruggs, as the executors of R. Scruggs, by note, in the sum of $1,500, given for a slave bought at the administration sale. This slave was one of the slaves sold by Myers to R. D. Scruggs, and Scruggs agreed to take up Myers' note from the executors and deliver it to Myers. This he failed to do, and, a controversy arising between Myers and Scruggs touching their trade, on the 27th of March, 1861, Myers filed his bill against R. D. Scruggs, W. C. Scruggs, A. Scruggs and others, attaching certain property of R. D. Scruggs, and debts alleged to be due him, and enjoining the disposition of such property, and the transfer of the debts. Among other things, the bill charged that R. D. Scruggs did pay one of the executors, namely, W. C. Scruggs, $1,500 upon the note of Myers to them, and that said W. C. holds on to the $1,500 paid, and also to the note, upon the ground that he, W. C., is security for R. D. Scruggs to the

amount of $1,000, and entitled to hold the same to indemnify him as such surety. Myers further charged that shortly after R. D. Scruggs gave his obligation to pay Myers' note, he, Myers, met W. C. Scruggs and told him of the arrangement, who said it was all right, and that A. Scruggs, the other executor, told him, Myers, that R. D. Scruggs had left the $1,500 with the executors to hold until the controversy was settled between Myers and R. D. Scruggs. R. D., W. C. and A. Scruggs filed a joint answer to this bill. R. D. Scruggs says, in reference to the particular charge made, that he brought from Memphis the money to pay the note of Myers to Scruggs' executors, provided Myers would settle with him about the price of one of the slaves specified who proved to be unsound; that Myers refused to settle, and respondent, R. D., loaned W. C. Scruggs $1,500, with the understanding that it was to be placed to the credit of his, R. D.'s, own note to the executors, in the event Myers would not settle fairly with respondent. A. Scruggs says in the answer that he had told Myers that W. C. Scruggs told him that R. D. Scruggs had loaned W. C. Scruggs $1,500, upon what terms and for what time he did not know, and that he did not say that R. D. had left the money with the executors as charged. W. C. Scruggs says in the answer that R. D. Scruggs loaned him the $1,500, with the understanding that it was to go as a payment on the note of R. D. Scruggs to the executors in the event Myers refused to take back the unsound slave. Respondent then executed his note to R. D. Scruggs

for the $1,500, so that it might bear interest to rebut the note held by the executors on R. D. Scruggs.

On the 15th of November, 1866, Myers filed an amended bill making the present complainant, Chilton, a party defendant, upon the ground that he claimed the $1,500 note. Chilton answered, setting up his right under the assignment of the 3d of May, 1861. Such proceedings were had in the cause that by final decree of this court at its September term, 1872, the bill of Myers was dismissed as to the present complainant and the note of $1,500 in controversy. The suit at law was commenced shortly thereafter.

An examination of the attachment and injunctions obtained and sued out in the Myers case shows that neither the $1,500 note, nor the money or debt for which it was given, were attached in that cause, nor was there any injunction asked for or sued out enjoining any person from bringing suit thereon. No attachment or injunction at all was obtained when Chilton was made a party defendant. And the injunctions which had been sued out under the original bill were dissolved by the chancellor on the 1st of July, 1861. It is obvious, therefore, that there was no process in that case which inhibited Chilton from suing upon the note, or prevented the running of the statute of limitations. And the pendency of one suit will not prevent the running of the statute in another suit, when the latter suit does not fall within the saving of the Code, sec. 2755. *Hopkins* v. *Calloway,* 7 Cold., 37; *Anderson* v. *Bedford,* 4 Cold., 464.

It is said, however, that complainant was under

the mistaken belief that he was enjoined from suing by that suit. The bill alleges that this belief was fixed. upon complainant's mind by representations of W. C. Scruggs, but of this averment there is no proof. It is highly probable, if not certain, that the complainant did have the impression and belief as stated. For in his answer to the amended bill making him a party defendant, he asks that the injunction issued in the cause be dissolved as to him, and in the final decree rendered there is an order for the dissolution of the injunction as to him. The question therefore is, whether the innocent mistake of the complainant, not superinduced by any act or word of the defendant, as to the existence of the injunction, is sufficient to enable a court of chancery to interfere with the defendant's legal right to rely upon the statute.

It was held at an early day by this court, that when chancery dismisses a bill because the complaint made by it is relievable at law, it will not suffer the act of limitations to be pleaded during the pendency of the suit in the court, and will direct that the act be not opposed to the claim at law for such time. *Love* v. *White*, 4 Hay., 210. Afterwards, it seems to have been argued before the court that equity might enforce demands barred at law upon general principle. " The answer is," says the court, " that the statute of limitations can be no more resisted or obviated in a court of equity than in a court of law, in those cases in which, if prosecuted at law, it would be a bar. The complainant's solicitor is mistaken in supposing that, when a purely legal demand has been

barred by the lapse of time, a court of equity has power, on account of any supposed iniquity, to enjoin the party from insisting on the statute of limitations in any action which may be brought at law for its recovery. It is true, that in some cases courts of equity have, in dismissing a bill for want of jurisdiction on account of the legal character of the demand, enjoined the defendant from relying on the time that elapsed during the pendency of the bill as a defense to an action which might be brought at law. Even this is not sanctioned by principle; but no case, it is presumed, ever occurred, when, before the filing of the bill, time had formed the bar, a court of chancery decreed that a defendant should be enjoined from relying on the statute of limitations. The assumption of such a power would be setting the court of chancery above the legislature, and cause the creation of exceptions, at the discretion of the court, which the statute has not made." *Walker* v. *Smith*, 8 Yer., 241. In a subsequent case, the delay in suing was occasioned by the defendant requesting the creditor to delay suit, and institute a suit against another party to the contract, which was done. Upon bill filed to enjoin the debtor from relying upon the statute, the court refused relief, saying: "It is a high power in a court of chancery to prohibit the use of this defense in a court of law, and one not to be exercised but in very plain cases of a fraudulent abuse of the advantage of the lapse of time gained by the party seeking to use it." *Bank of Tenn.* v. *Hill*, 10 Hum., 176. In the absence of anything to show that the delay

was occasioned by the debtor, this case falls within the general rule.

The substance of the answers of R. D. Scruggs and W. C. Scruggs in the Myers case is, that the $1,500 were loaned by the former to the latter, with the understanding that it was to be applied to the credit of R. D. Scruggs' note payable to the executors on which Chilton was surety, in the event, which has happened, that Myers would not settle with R. D. Scruggs, the controversy between them growing out of the unsoundness of one of the slaves sold by Myers to Scruggs. W. C. Scruggs in the answer further says: " Respondent, W. C., does hold said money as indemnity for a suretyship of $1,100 as stated in the bill. The said W. C. and A. Scruggs hold said fund in payment of so much of the debt due the estate of R. Scruggs, deceased, by the said R. D. Scruggs." The answer was sworn to by the defendants respectively on the 13th, 14th and 15th of June, 1861. In his deposition in the Myers case, taken in October, 1870,. W. C. Scruggs says he borrowed the money for his private purposes, and adds: " It was my expectation at the time I gave the note that I would pay it by crediting the notes of said R. D. Scruggs to myself and A. Scruggs, as executors of R. Scruggs, with the amount of it when they became due, or when R. D. Scruggs demanded payment of the note of me." This witness proves in the same deposition that Chilton paid the notes of R. D. Scruggs to the executors, about $1,700 in money, and the residue by sale of his property, which had been conveyed, after the

maturity of the notes, in trust to secure their payment. Those notes were not credited with the amount of W. C. Scruggs' note, because of the claim set up by Myers and the pendency of the litigation instituted by him. These facts do fairly raise the question whether, under the circumstances, W. C. Scruggs is not something more than a mere debtor by the note sued on for the money which he thereby promises to pay, and has charged himself with a fiduciary liability therefor within the bar of the statute.

The statute of limitations having been suspended from the 6th of May, 1861, to the 1st of January, 1867, the bar of the statute would not have attached at the date of the commencement of the action at law except for the time between the maturity of the note on the 3d of October, 1860, and the 6th of May, 1861. By their sworn answer in the Myers case, filed in June, 1861, both R. D. Scruggs and W. C. Scruggs acknowledge that the fund, for which the note was given, was loaned with the understanding that it was to be applied to the credit of R. D. Scruggs' note to the executors, and therefore to the indemnity of complainant Chilton, and the present defendant adds that the executors "hold the fund in payment of so much of the debt due the estate" by R. D. Scruggs. Here was not only a recognition of the trust relation, but an admission that it was held as a payment of the particular debt, subject, of course, to the result of the Myers suit. By the same answer these parties had conceded the creation of an equity at the time the money was loaned in favor of Myers

in one contingency, a contingency, however, which they insisted had not occurred. The court might have differed from them on that point, and in that view, the fund, although held as a payment on R. D. Scruggs' notes, could not be so applied, nor paid to Chilton after he had satisfied those notes, until that litigation was terminated. The *lis pendens* of that suit, if it did not begin with the filing of the bill on the 27th of March, 1861, certainly did with the service of process on R. D., W. C. and A. Scruggs in the month of April, and therefore antedated the assignment of R. D. Scruggs to complainant Chilton on the 3d of May, 1861. The *lis pendens* prevented the execution of a trust, distinctly recognized by the present defendent in June, 1861, by a statement made under the sanction of an oath in the course of a judicial proceeding.

The complainant was then, it is true, not a party to those proceedings, but he was made a party by the amended bill in 1866. And afterwards, in October, 1870, W. C. Scruggs' deposition was taken in that cause. In that deposition, while he says that he borrowed the money for his private purposes, yet he adds: "It was my expectation at the time I gave the note, that I could pay it by crediting the notes of said R. D. Scruggs to myself and A. Scruggs, as executors of R. Scruggs, with the amount of it when they became due, or when R. D. Scruggs demanded payment of the note of me." When this statement is taken in connection with the somewhat fuller state-

ment of the answer, it is, in substance, a recognition of the original trust that the fund was to be credited on that particular debt. The assignment to Chilton was for the same purpose, and he is in equity, since the dismissal of Myers' bill, entitled to have the fund applied to his indemnity.

In his answer and deposition in this case the defendant has changed his ground, and ignores his sworn statements in the previous suit, without, however, showing, or attempting to show, that they were made inconsiderately, or without full knowledge of the facts. The presumption is that he knew the facts at that time when they were fresh in his mind better than he did at the commencement of the present suit. The doctrine of estoppel, under these circumstances, applies, and the defendant cannot be permitted to deny his solemn admissions, of record and under oath. *Hamilton* v. *Zimmerman*, 5 Sneed, 40.

The same estoppel equally operates to prevent the defendant from relying upon the plea of set-off filed in the action at law. He has solemnly sworn that he did not hold the fund in controversy as indemnity against liability as a surety of R. D. Scruggs, but in payment of so much of the debt on which the complainant was liable as surety.

The demurrer filed to the bill in this case did not cover those equities and estoppels, and was properly overruled by the chancellor.

The decree will be reversed, and a decree rendered here in favor of the complainant against the defend-

ant for the note or fund in controversy, with interest. The suit at law will be perpetually enjoined, and the defendant will pay the costs of this suit and of the suit at law.