# LAURA V. NICHOLSON *vs.* J. HENRY SNYDER of Charles.

*Practice Act—Denial of Signature—Admissions Made in Former Suit May be Shown to be Erroneous—Impeaching Notarial Certificate— Estoppel—Evidence.*

It is provided by sec. 312 of the local law of Baltimore City (Act of 1898, ch. 123,) that if there be filed with the declaration in an action on a contract any paper purporting to be signed by the defendant, the genuineness of the signature shall be deemed to be admitted unless the defendant's affidavit to his pleas shall state that the affiant knows that such signature was not written by, or by the authority of, the person whose signature it purports to be. In this case suit was brought on three promissory notes and the defendant's affidavit was that "she knows her alleged signature upon the notes filed with the declaration were not written by her or by her authority." *Held,* that this language is a sufficiently clear denial of the authenticity of each and all the signatures and it was not necessary to state that none of her alleged signatures were written by her.

Although a notary public cannot be allowed to impeach his official certificate that a certain person made an affidavit before him, yet it is competent to prove by other evidence that the notarial certificate is false.

The record of a chancery or bankruptcy proceeding between the same parties is competent evidence in a subsequent suit between them to prove admissions there made relating to the rights in controversy. But an admission so made is not conclusive and the party against whom such record is offered may rebut the *prima facie* case so made by showing, either that he did not in fact make the admission, although contained in the record, or that it was made by mistake or inconsiderately.

A party is not estopped to deny the truth of an admission made by him unless the admission was designed to influence the conduct of another and did influence it, and a denial thereof will operate to the prejudice of the other party.

Plaintiff was the payee of three promissory notes purporting to be signed by Mrs. N. and her husband. When the first note became due and was not paid, plaintiff instituted a proceeding in bankruptcy against Mr. and Mrs. N., and a paper was there filed, as an answer by them, admitting the indebtedness as alleged in the petition but denying the insolvency of Mrs. N. This paper was signed by Mr. N. and by his counsel and was verified by a notarial certificate that it was sworn to

by both Mr. and Mrs. N. Subsequently the plaintiff dismissed the bankruptcy proceedings because he had ascertained that Mrs. N. was not in fact insolvent, and then brought this action on all three notes against Mrs. N., her husband having died in the meanwhile. The defendant offered to prove by her own testimony and that of another witness that she did not make the affidavit to the answer and that she did not authorize her husband to file the answer and had no knowledge of the matter, and also that she did not sign any of the notes sued on and had never ratified them. *Held*, that this evidence is admissible although it contradicts the admission made by the answer in bankruptcy, because if that answer was not filed with defendant's knowledge she was not affected by it, and if it was filed with her knowledge, she is not estopped from showing that the admission was made by mistake, since the conduct of the plaintiff had not been influenced by it.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Bernard Carter* and *T. Wallis Blackistone,* for the appellant.

The Court below determined as a matter of law that, because the answer of February 2nd, 1900, to the petition in bankruptcy was offered in the name of, and on behalf of the appellant, and of her husband by a solicitor, and that there was appended to the said answer a certificate by the notary public that the appellant and her husband personally appeared before him and made oath in due form of law that the matters and facts alleged in the said answer are true to the best of their knowledge and belief, she is forever estopped from (*a*) proving that the note of August 27th, 1899, was neither signed by her nor by her authority, and that her signature thereto was never in any way ratified by her, and that she never assumed liability for the note, and never promised to pay it; (*b*) that she did not authorize the solicitor whose name is signed to the said answer, or any one else, to prepare the same for her, and that she had no knowledge of the preparation and filing of the said answer; that she was not present when the answer was sworn to, and that she did not swear to it. We submit, that it is utterly impossible that the proposition thus lying at the foundation of all these rulings can be sustained in this Court.

The only way in which the statements contained in the answer in question could be used against the appellant in the present case would be because the answer contained a statement of an admission by the appellant that she was indebted to the plaintiff under and by virtue of the note of August 27th, 1899, which is one of the notes sued on in this case. Now if in such a condition of things the appellant is precluded from proving what she offered to prove, as stated in the second, third, fourth and fifth exceptions, a lawyer and a notary, by conspiring together to file a sworn answer on behalf of a defendant, could forever preclude such defendant from showing that he had no part or lot in the making or the filing of such answer. It is a fundamental principle, known to everybody, that fraud will vitiate anything, even the most solemn transactions; and that any asserted title founded on it is utterly void. The evidence offered by the appellant shows that if the answer of February 2nd, 1900, is to stand as an admission, and still more if an estoppel, as against her, a gross fraud will be perpetrated upon her.

Even if the appellant had filed the answer, yet the statements therein were not conclusive against her but only threw upon her the burden of explaining them or showing that the admissions therein made in reference to the note were made by mistake. 1 *Taylor on Evidence*, sec. 857; 1 *Wharton on Evidence*, sec. 838; *Blanks* v. *Klein*, 53 Fed. Rep. 438; *Washington Ice Co.* v. *Webster*, 68 Me. 433; *Seibert* v. *Leonard*, 21 Minn. 442; *Chilton* v. *Scruggs*, 73 Tenn. 318; *Hamilton* v. *Zimmerman*, 5 Sneed, 39.

Admissions made in a former trial may be admitted, but the circumstances surrounding the admissions relied on, the purposes for which they were made, etc., may be shown. *Perry* v. *Simpson*, 40 Conn. 317. In regard to the conclusiveness of admissions, it must be remembered, that the genius and policy of the law favors the investigation of truth by all convenient and expedient methods, and that the doctrine of estoppel by which further investigation is precluded, being an exception to the general rule, founded in convenience, and for the pre-

vention of fraud, is not to be extended beyond the reasons on which it is founded.    2 *Herman on Estoppel*, sec. 722.

Estoppels signify that a man for the sake of good faith and fair dealing should be estopped from saying that to be false which by his means he has once accredited for truth, and by his representations has led *others to act.*    The very meaning of estoppel is when an admission is intended to lead, and does lead, a man with whom a party is dealing, into a line of conduct which must be prejudicial to his interest, unless the party estopped is to be cut off from the power of retraction.    1 *Herman on Estoppel*, sec. 3.    Nobody ought to be estopped from averring the truth or asserting a just demand unless by his action or words or neglect his now averring the truth or asserting his demand would work some wrong to some· other person who has been induced to do something, or abstain from doing something by reason of what he had said or done, or omitted to say or do.    *Adamson in re Collier*, Law Rep. 8 Ch. Div. 817.    Because the estoppel may exclude the truth, for this reason estoppels must be certain to every intent.    No one shall be denied setting up the truth unless it is in plain and clear contradiction to his former allegations and acts.    1 *Herman on Estoppel*, sec. 14.

*Frank Gosnell* (with whom were *T. M. Lanahan* and *E. S. McElroy* on the brief), for the appellee.

The bankruptcy proceeding was a case between the same parties, and one of the principal, if not the most vital question, involved therein was the liability of the appellant upon the $2,000 note dated August 27th, 1899.    She not only admitted the indebtedness but *swore to the answer* containing the admission.    She made several attempts in the United States Court to get rid of that admission, but that Court consistently ruled each time that she was estopped from so doing.    That the Federal Court was correct in its ruling and that the learned Court·below was correct in holding that the appellant was thereby estopped from denying her liability upon that note is ·abundantly supported by authority.    *Mobberly* v. *Mobberly*, 60

Md. 376, 377, 380; *B. &. O. R. R.* v. *Perlman,* 81 Md. xv;
s. c. 32 Atl. Rep. 195; *Pope* v. *Allis,* 115 U. S. 370.

Appellant's third prayer was properly rejected, because a
forged instrument *is* capable of being ratified, and may be en-
forced in a Court of law.    *Whiteford* v. *Munroe,* 17 Md. 141,
149; *Davis* v. *Shaw,* 42 Md. 413; *Code. Supp.,* Art. 13, sec.
42, p. 29; *Code,* Art. 75, sec. 108; *Leather, etc., Bank* v.
*Morgan,* 117 U. S. 109, 110; *Forsythe* v. *Bonta,* 68 Ky. 547.

Had the defense interposed been the least meritorious, and
had the jury for a moment given credence to appellant's evi-
dence, their verdict would have been limited to the note in-
volved in the bankruptcy case.    The jury evidently found her
to be a thorough business woman, in the habit of going upon
her husband's notes and securing his indebtedness whenever
occasion required, and simply did not believe her when she
said she "*did not know that he* (appellee) *held paper with my
name on it.*"    They accordingly found in favor of the appellee
upon all the notes.

PEARCE, J., delivered the opinion of the Court.

This suit was brought to recover the amount of three
promissory notes payable to the order of J. Henry Snyder of
Charles, made and signed by James A. Nicholson, and pur-
porting to be signed by Laura V. Nicholson, his wife, but
James A. Nicholson having died before suit was brought, the
appellant was the sole defendant. These notes were as follows:
One for $2,000, dated August 27th, 1899 @ 4 months, one
for $2,000, dated November 28th, 1899 @ 2 months, and one
for $400, dated November 13th, 1899 @ 4 months.    The
declaration contained the common counts, and a special count
on each of the notes, and the plaintiff annexed thereto the affi-
davit required when proceeding under section 313 of the
New Charter of the city of Baltimore known as the Practice
Act.    The defendant pleaded the general issue pleas, and an-
nexed thereto an affidavit denying that her alleged signatures
to said notes were written by her or by her authority, as re-
quired by section 312 when such signatures are denied. Upon

the trial, a verdict for $5,189.79, the full amount of these notes, was rendered for the plaintiff, and the defendant has appealed from the judgment entered thereon.

The plaintiff contended that section 108 of Art. 75 of the Code, regulates the defense, and that under it, the denial of defendants could only be made in the plea itself, and that the defense of forgery was therefore not in the case, but the Court ruled that the denial could be made in the affidavit as provided by sec. 312 of the New Charter. Since that ruling was made, its correctness has been established by two recent decisions in this Court, one in *Farmers and Mechanics Bank* v. *Hunter*, ante p. 148, decided April 1st, 1903, under the Local Law of Carroll County, and one in *Horner* v. *Plumley*, ante p. 271, decided April 22nd, 1903, under sec. 313 of the New Charter, the latter being substantially the same as the Local Law of Carroll County. It is unnecessary therefore to dwell upon that question. It was contended however by the plaintiff that the defendant's affidavit did not conform to the requirements of sec. 312, and this objection will be first considered. That section provides that the affidavit shall state that the affiant "knows that such signature was not written by, or by the authority of, the person whose signature it purports to be;" the defendant's affidavit being that "she knows her alleged signatures upon the notes filed with the declaration in this case, were not written by her, or by her authority;" the argument of the plaintiff being that it should have said that "*none* of her alleged signatures upon said notes were written by her or by her authority." We do not think this criticism can be allowed to prevail, though it might have been more prudent to exclude the possibility of criticism by using some such language as it suggests. We think however the language used constitutes a sufficiently clear denial of the authenticity of *all* the signatures, and is, in legal contemplation, a denial of the signature of *each*. If there could otherwise be any serious question upon this point, it is removed by the reference in the affidavit to the notes, as being those "filed with the declaration in this case," thereby emphasizing that

the denial embraces *all* the notes sued on, and consequently, *every one of them* ; and we are not required to strain the construction of a statute, or the meaning of the language of this affidavit, for the purpose of depriving a party of so meritorious a defense as forgery.  During the progress of the trial eight exceptions were taken to rulings upon the evidence, and one to the rulings on the prayers.

The first exception was taken to the admission in evidence of the record of a proceeding in bankruptcy instituted in the United States District Court by the present plaintiff against the present defendant and her husband, upon the first of the promissory notes herein mentioned, which proceeding was, after the death of the husband, dismissed without prejudice, upon petition of the plaintiff because he had ascertained to his satisfaction that Mrs. Nicholson was not in fact insolvent. This record was offered with the special purpose of contradicting by Mrs. Nicholson's answer in that proceeding, her plea and affidavit in this case.  The eighth exception was taken to the refusal of the Court to allow the notary public before whom the defendant's answer in the bankruptcy proceeding, purported to be sworn to, to impeach his official certificate.  Both these exceptions were abandoned by the defendant at the argument in this Court, and we think correctly.

Among the proceedings in bankruptcy which were admitted in evidence was a paper purporting to be an answer by Mr. and Mrs. Nicholson to the petition of the plaintiff, which expressly admitted "the indebtedness of $2,000 alleged in the petition," but denied the insolvency of Mrs. Nicholson.  This paper was signed by Mr. Nicholson, and by John W. H. Fry, *his* counsel, who signed as "attorney for respondents," but it did not purport to be signed by Mrs. Nicholson.  After the plaintiff closed his case, the defendant called a Mr. Schaeffer as a witness, and offered to prove by him the following facts: That he went with Mr. Nicholson, at his request, about February 2nd, 1900, that being the date of the alleged answer, to Fry's office; that Fry prepared the alleged answer then and there, in their presence; that the notary, William H. Jones,

was sent for and certified the affidavit attached to the answer; that Fry then said it was very important it should be immediately filed in the United States Court and that he had only a moment to get over to Court, as it was then nearly four o'clock; that Mrs. Nicholson was not present and did not sign the answer then, and that so far as he knew there was no communication between Mrs. Nicholson, and Mr. Fry and the notary on that day; but the Court refused to allow this offer, and this constitutes the second exception.

Mrs. Nicholson was then sworn as a witness, and was asked, after referring to the answer, "Had you any knowledge of the preparation and filing of that answer?" which was also refused, and it constitutes the third exception.

She was then asked, "did you authorize Mr. Fry, or any one, to prepare that answer for you?" which was refused, and this constitutes the fourth exception.

She was next asked, "Did you swear to that answer?" which was also refused, and this constitutes the fifth exception.

She was next asked, "Look at the note dated August 27th, 1899, for $2,000, payable to the order of J. Henry Snyder of Charles, and state whether you ever signed it, or authorized any one to put your signature to it?" which was also refused, and this constitutes the sixth exception.

Lastly, she was asked, "Have you ever, since the date of that note, ratified it, or adopted it, or promised to pay it?" which was also refused, and this constitutes the seventh exception.

These rulings are all manifestly based upon the theory that the alleged answer in the bankruptcy proceedings was a *conclusive* admission of indebtedness upon that note, and that as the evidence offered contradicted that answer, it was not admissible. These rulings therefore, must either stand, or fall, together.

The plaintiff then offered three prayers, all of which were granted, and the defendant offered five, all of which were refused except the second which dealt only with the two notes

not involved in the bankruptcy proceedings, as to which the jury were instructed that if they believed they were never signed by Mrs. Nicholson, nor authorized nor ratified by her, and that she never promised to pay them, then the plaintiff could not recover thereon.

For the purposes of this case it will only be necessary to consider the first prayer of the plaintiff and the first prayer of the defendant. By the plaintiff's first prayer, the jury was instructed that the defendant was estopped from denying her liability upon the note of August 27th, 1899, and that as no evidence had been offered of payment of any part of this note, the verdict must be for the plaintiff for the amount of that note with interest.

The defendant's first prayer which was refused, asked that the jury be instructed that if they believed Mrs. Nicholson did not sign that note, nor authorize any one to sign it for her; that she never ratified the signing, never assumed any liability for the note, and never promised to pay it ; then the plaintiff could not recover thereon.

It will thus be seen that all the exceptions, and the two prayers above-mentioned, involved substantially the same question, and may all be considered together. It is settled law that a record in a chancery suit between the same parties, and relating to the same subject of inquiry, is admissible evidence in a subsequent suit between the same parties for the purpose of proving antecedent admissions of either party relative to rights again involved in controversy; (*Mobberly* v. *Mobberly*, 60 Md. 376), and this is equally true of a record in a Bankruptcy Court. This rule rests upon principles sound in themselves, and as satisfactory to the lay as to the legal mind, for consistency in essential and fundamental matters is universally regarded as one of the surest indications of truth and accuracy, as inconsistency is of doubtful veracity or infirmity of memory. When one, is called on in law to assert or defend a right, he is not likely to make any admission destructive of, or prejudicial to, his right, unless compelled by his regard for truth, and therefore it is eminently proper that any such ad-

mission, whether made in the pleadings, or in the evidence, should be regarded as of high probative force. But the whole value of such evidence depends upon whether the admission was *in fact* made, as it purports by the record to have been made, for if not *in fact* made, the refusal to inquire into this fact results in the substitution of falsehood for truth. If Mrs. Nicholson did not make, or authorize this answer to be made for her, it ought not to have gone to the jury as her undisputed admission of her indebtedness upon the note in question, and if she did not swear to it, it ought not to have gone to them as her confessedly sworn admission. It was *prima facie* proof of such admission, and as such was properly admitted in evidence, but we can perceive no sound or just principle upon which she could be precluded from rebutting this *prima facie* case. It is very clear that the notary was properly not allowed to impeach his certificate, as held in *Central Bank of Frederick* v. *Copeland,* 18 Md. 305; *Matthews* v. *Dare,* 20 Md. 271, and *Highberger* v. *Stiffler,* 21 Md. 351; but these cases just as clearly recognize that the testimony of Schaeffer and Mrs. Nicholson, excluded in the 2nd, 3rd, 4th and fifth bills of exception should have been admitted, for in the *Copeland case,* approved in the two later cases, the Court said: ''That the statements contained in the certificate (to the execution of the mortgage by Mrs. Copeland) under the circumstances, and as between the parties in the case, were open to contradiction by proper and competent proof, cannot be doubted.'' If this cannot be done in the present case, then as was said by counsel at the argument, ''a lawyer and a notary, by conspiring together to file a sworn answer on behalf of a defendant, could forever preclude such defendant from showing that he had no part or lot in the making or filing of such answer.'' And here it may be noted as illustrating the wrong of excluding such evidence, that this record discloses an *agreement of counsel* that the notary if present, would testify, subject to exception, that Mrs. Nicholson was not present when her husband swore to the answer, and never swore to it herself; and it also discloses the fact that Mr. Fry, the at-

torney, was not sworn as he might have been, to prove, if he could truthfully do so, that Mrs. Nicholson did authorize and swear to the answer. It is true that the testimony of the notary, as offered, was properly excluded for the reasons stated, but treating it as if expunged from the record, we may ask why the notary was not called as he might have been to prove that his certificate possessed in *fact* the conclusiveness sought to be given it in law by the plaintiff. It follows also from what we have said that the testimony of Mrs. Nicholson which was excluded in the 6th and 7th exceptions should have been admitted, and that the Court erred in striking out all the testimony admitted subject to exception, tending to show she was not liable on the note of August 27th, 1899, for if the answer was not hers, there was no reason why she could not testify she had never signed nor ratified the note, and no reason why any evidence tending to show she was not liable therefor should be stricken out.

If, however, the alleged answer were in fact her answer, and even if it were made under oath, we are of opinion that its statements would not be legally conclusive against her, and that she would be entitled to explain them by any competent evidence in her possession, provided, of course, that the principle of estoppel did not preclude it, as we shall later show it does not do in this case. This is the law as stated in 1 *Greenleaf's Evidence*, sec. 210; 2 *Taylor on Evidence*, sec. 857, and 2 *Wharton on Evidence*, sec. 833. In *Perry* v. *Simpson*, 40 Conn. 317, it was said: "Admissions made in a former trial may be admitted, but the circumstances surrounding the admissions relied on, the purposes for which they were made, &c., may be shown." This language is especially apposite to the present case in view of the condition of Mr. Nicholson's health at the time, and the painful situation in which Mrs. Nicholson was placed thereby as disclosed by the record in the bankruptcy case. In *Chilton* v. *Scruggs*, 73 Tenn. 318, the Court said: "One who has made solemn admissions under oath in the course of judicial proceedings will not be permitted to deny them, without first

showing that they were made inconsiderately, or without full knowledge of the facts;" and in *Hamilton* v. *Zimmerman*, 5 Sneed, 39; "In either case, whether *in pais*, or in judicial proceedings, if it satisfactorily appear that the party made admissions inconsiderately or without full knowledge of the facts, it is proper that the Court should relieve him from the consequences of his error." In *Blank* v. *Klein*, 53 Fed. Rep. 436, it was said, "Judicial admissions and pleadings of a party in another suit than the one under consideration are open to explanation or rebuttal, or it may be shown they were made by mistake," and the following passage from *Wharton on Evidence*, sec. 838, was cited and approved: "The qualities of an estoppel which are imputable to a party's pleas so far as concerns the particular case in which they are pleaded, are not imputable to such pleas when offered collaterally." In *Elliott* v. *Hayden*, 104 Mass. 180, an admission made in a bill in equity sworn to by the plaintiff was held "competent, *but not conclusive*" against him. In *Coombs* v. *Hodge*, 21 Howard, 397, where the petition and answer were signed by counsel and not by the parties, it was held they could not be resorted to for admissions of the respective parties. In that case, it should be observed that the plaintiff in the former suit was not the same as in the latter, but the Court cited in support of the law announced, the case of *Boileau* v. *Ruttlin*, 2 Exch. 665, in which Baron Parke said that "pleadings in equity as well as at common law are not to be treated as positive allegations of the truth of the facts therein, but only as statements of the case of the party to be admitted or denied by the opposite side, and if denied, to be proved, and ultimately submitted for judicial decision. The facts *actually decided by* an issue in any suit cannot be again litigated between the same parties, and are conclusive evidence between them, * * * *. But the statements of a party in a declaration or plea, though for the purposes of the cause he is bound by those that are material, ought not, it should seem, to be treated as confessions of the truth of the facts stated." In the case before us, nothing was actually decided in the former suit, that being dis-

missed by the plaintiff upon his own admission of ina-
bility to prosecute it to a successful termination, and it follows
from the authorities we have cited, that the answer in the
bankruptcy proceeding, even if shown to be her answer could
not be held conclusive against her.

It only remains to inquire whether upon any principle of
good faith and fair dealing, Mrs. Nicholson could be estopped
by her answer, even if it had been filed with her knowledge
and consent.

The leading case of *Alexander* v. *Walter*, 8 Gill, 251,
adopted the definition of an estoppel *in pais* given in *Dezell* v.
*Odell*, 3 Hill, 215, in these words: "We have the clear case
of an admission by the defendant, intended to influence the
conduct of a man with whom he was dealing, and actually
leading him into a line of conduct which must be prejudicial
to his interests unless the defendant be cut off from the power
of retraction. *This is the very definition of an estoppel in pais.*
For the prevention of fraud the *law holds the admission to be
conclusive.*" And in the same case the Court cited the fol-
lowing language from *Welland Canal Company* v. *Hathaway*,
8 Wendell, 483: "As a general rule a party will be precluded
from denying his own acts or admissions, which were ex·
pressly designed to influence the conduct of another, and did
so influence it, and when such denial will operate to the injury
of the latter," and similar language was also cited from
*Hearne* v. *Rogers*, 9 Barn. and Cress. 577.

In *Homer* v. *Grosholz & Coquentin*, 38 Md. 526, this Court
said, "To constitute such an estoppel there must be acts or
admissions intended or designed to influence the conduct of
another; the acts or admissions must come to the knowledge
of the party; his conduct must be influenced by them, and a
denial of them must operate to the injury of the party whose
conduct is influenced by them. The Court of Appeals in the
case of *Alexander* v. *Walter*, adopted the rule laid down in the
*Welland Canal Company's case*, and applied it to the case be-
fore them, and it must be regarded as the law of this State."

It is settled at common law that an estoppel *in pais* need not

be pleaded and may be given in evidence under the general issue. 8 *Ency. Plead. and Prac.* 6, and it is so held in this State. *Alexander* v. *Walter, supra.* But the rule as to what must be proved to constitute an estoppel, is the same as to what must be alleged to constitute a good plea of estoppel, and this rule is that *every fact* supporting an estoppel *in pais* must be clearly made out by the party relying on it. 8 *Ency. Plead. and Prac.* 10, and *Sharon* v. *Minnock*, 6 Nev. 377, where it was held that if a plea does not' allege that the party relying on the estoppel was induced to act differently from what he otherwise would, and that he was prejudiced thereby, the plea will be bad. There is no evidence whatever that the plaintiff in this case has done, or omitted to do anything, which he would otherwise have done, or omitted to do, nor any suggestion of any possible prejudice resulting to him from the admission made in the alleged answer of Mrs. Nicholson. He was informed by her petition filed in those proceedings July 16th, 1900, that she claimed her signature was a forgery, and he prayed leave to dismiss his petition April 12th, 1901, solely because he admitted that she would be able to prove her solvency as she alleged. If we could discover in this case the essential requisites of an estoppel *in pais*, we should not hesitate to give effect to it, but we cannot discover them.

> *Judgment reversed with costs to appel-*
> *lant above and below, and new trial*
> *awarded.*

(Decided June 30th, 1903.)